[File No. 6044.]

JOHN KRITZBERGER, Appellant, v. TRAILL COUNTY, a Public or Municipal Corporation, et al., Respondents.

(242 N. W. 913.)

Opinion filed May 25, 1932.

*Chas. H. Shafer,* for appellant.

*G. McLain Johnson,* State's Attorney, and *W. M. Backstrom,* Assistant State's Attorney, and *Theo. Kaldor,* for respondents.

BURR, J. The plaintiff alleges the defendant threatens to excavate on his land, remove his fences and appropriate part of his land for the purpose of building a road; that no road has been laid out on the

portion sought to be taken; and unless restrained the defendant will commit the acts threatened.

The defendant admits it is attempting to build the road, but claims a right to enter upon the land and grade the road on the ground that for years a legal highway has been established along the quarter line of the farm—the north line of the quarter. The court found the road to be legally established to the width of sixty-six feet and denied an injunction. From the order entered in conformity therewith the plaintiff appeals.

The plaintiff is the owner of the southeast quarter of section 2 in township 145, range 51. In 1876, and prior thereto, one Mikkelson occupied the land under the homestead laws of the United States and in 1879 sold his relinquishment to John Otto, and prior to that time the quarter line was travelled as a road. Otto made final proof on the land, obtained patent in 1887, and sold the land in 1900 to Ludvig Krueger. Krueger sold the land in 1909 to the Brown-Danskin Company, and this company in the same year sold the land to one Noble, who sold it to the plaintiff in 1920.

In 1876, a petition was filed with the board of county commissioners of Traill county, praying for the laying out of a road beginning at the "quarter stake on the east side of section 22 in township 146 range 49." Tracing the road as desired shows a rather unusual route even for primitive times. The extreme stretch of the road from east to west is twenty-four miles but the road is over fifty-one miles in length, fifteen of which are on quarter lines. In its course it runs a distance of three miles south of the point of beginning and rises to a point fifteen and a half miles north of the point of beginning. There are some fifty-one corners on the road as described and two or three portions state the new road is "to follow the old road." On its route the proposed road follows the road already used along the quarter line directly north of the plaintiff's farm.

When the petition was filed the board of county commissioners, under date of October 3, 1876, made a minute on its records showing the presentation and granting of the petition and directing one Hector Bruce to survey the same. The petition shows nothing with reference to the width of the road, nor any other action on the part of the board of county commissioners. But the petition did not need to state the

width as that "is determined by statute unless otherwise fixed by the establishing body." Dickson v. Davis County, 201 Iowa, 741, 205 N. W. 456. See also Taylor v. Austin, 83 Neb. 581, 119 N. W. 1123.

The records show the use of this land as a road or trail long before the petition was filed. One witness testified that this particular portion of the road involved had been used as a road ever since 1871 and in continuous use ever since. Another testified he has used it for fifty-four years. Another testified that he had travelled that road since 1878 or 1879.

John Otto testified that in the spring of 1880 "they" plowed two furrows to indicate the road, already in use, and testified that he and other neighbors gave one rod on each side of the furrows for the road—the plaintiff seeking to show the width granted was but one rod on each side of the center of the road. A witness, forty-seven years of age, testified he used it as a child going to and from market, church and school, and his children have done the same. Another testified he travelled it since 1906. It has been used as a mail route for twenty-five years, and one mail carrier has used it for sixteen consecutive years, and so on up to the present time.

From time to time work was done on this road. The record does not show when the township was organized, but in 1913 the road overseer of the township worked on this particular portion of the road and in grading it used the township machinery. At that time there were no stakes or measurements showing the width of the road. While there was very little work done on this particular section of the road, no special work being needed; yet grading was done on other portions, culverts, and bridges built, and the road otherwise maintained for traffic.

The plaintiff does not deny there is a road but claims that whether it was obtained by prescription or dedication the road was of the width of two rods only. Consequently he built his fences to within a rod of the center of the road. He admits the road acquired is at least two rods wide, that former owners had left one rod on the south side of the quarter line; that in places there are "little ditches" on each side of the road and that there is a width of from eighteen to twenty feet from ditch to ditch, but we do not know the width of the ditches. The center of the road is a quarter line and he says he set his fence some-

thing like twelve or fourteen feet from the center of the roadway. It is clear therefore when he built his fence he encroached upon what he admits was the road.

It is undisputed that if the defendant grades the road and makes it a regular county highway of the width of two rods on each side of the center, it will take from the plaintiff a strip of land one rod wide and along the entire length of the north side of his farm.

The law in force at the time the petition was filed was codified and set forth in chapter 29 of the Code of 1877. Section 15 of chapter 13 of the Laws of 1867–68 gave to the county commissioners the power to locate and lay out roads. Section 1 of chapter 9 of the Laws of 1868–69 being § 30 of the Code chapter gave the board "the power to locate and establish highways on a section or quarter line, when the initial and terminal points can clearly be described, without the appointment of viewers or services of a surveyor . . . ." Section 33 of chapter 13 of the Laws of 1868 being § 37 of the Code chapter says: "All public highways which have been or may hereafter be used as such; for twenty years or more, shall be deemed public highways." Section 40 of the same 1868 law, being § 43 of the Code chapter makes "all public land . . . settled upon and occupied by settlers thereon" subject to the provisions of the act. Section 27 of the 1868 act says "no road shall be less than 80 feet wide; and the order for laying out a highway shall specify the width thereof." This provision was amended by chapter 14 of the session laws of 1874–75 making the minimum width sixty-six feet.

In Burleigh County v. Rhud, 23 N. D. 362, 136 N. W. 1082, this court had occasion to pass upon the statutory provision which said "all public highways which have been or may be used hereafter for twenty years or more shall be deemed public highways." We held this law applicable to highways travelled as public roads for twenty years or more prior to January 1, 1896, or continuously for that term since March 1897. The testimony shows that this quarter line, on the north side of plaintiff's farm, was travelled as a road as early as 1871 and continuously from then on to the present date. Hence there was a public highway regardless of the action of the county commissioners upon the petition referred to. The first period of twenty years expired in 1891 and the second in March 1917. At the end of the year 1891

there was a public highway along the quarter line. In addition it has been a "public highway" for more than twenty years after March 1897 and prior to the commencement of this action.

A public highway need not be opened by officials. The people may open the road themselves by use, "by taking possession and using it." Wilson v. Janes, 29 Kan. 234; Webb v. Butler County, 52 Kan. 375, 34 Pac. 973. In Berger v. Morton County, 57 N. D. 305, 221 N. W. 270, we held that "the common law rule with respect to the establishment of a highway by prescription is in force in this state."

The only real issue is the width of the road. The petition shows nothing about width but if a public road was acquired by the twenty years' user it means a road as understood and defined by the statute, unless shown to the contrary.

Again, the filing of the petition and the action thereon by the board is entitled to some consideration. True the record is silent as to further acts, but it is clear the public acted as if the road had been established by the board, and under color of claim, and this infers a highway of statutory width. The road was opened, worked, travelled the same as if the county board had done everything necessary to make it a legally established highway and the statute of limitations should surely run on any claim of irregularity. The obligations now are the same as if all statutory requirements were followed scrupulously. West Bend v. Mann, 59 Wis. 69, 17 N. W. 972, 973. It is immaterial how the road was established—whether by prescription, or defective proceedings and resultant estoppel—the road established means in contemplation of law "a legal highway," with width as defined by law unless the contrary is established.

The statute in force in 1871 to 1875 made the minimum width eighty feet. From 1875 to the present time the minimum width was 66 feet. The statute in force at that time did not say the width of the road was 66 feet "unless otherwise specified." It said "no road shall be less than 66 feet wide; and the order for laying out a highway shall specify the width thereof." This statutory provision for specification of width evidently applies to cases where a greater width is desired. It certainly is not a reduction in the width. "The fact that the public may not use or travel over the full width of such highway will not operate to narrow it." Webb v. Butler County, 52 Kan. 375,

34 Pac. 973; Dickson v. Davis County, 201 Iowa, 741, 205 N. W. 456, 458. If a legally acquired highway was of the width of the track merely it could not be worked or improved.

As pointed out heretofore this tract used as a road is but part of a proposed road—mostly on section lines. Roads on section lines are four rods wide, when no greater width is specified. We take judicial notice of the fact that in this State the ordinary width of a legal highway is four rods. If the owner of land permits a public highway to be established by prescription, it is assumed he intends a road of the statutory width. True, by fencing or otherwise he may indicate the grant of a road of less width; but in the absence of any proof to the contrary we assume the road intended is a legal highway. No part of the fence was built until 1923, and the remainder was built in 1931. Consequently the erection of the fence can not affect the road acquired before the fence was built. As said in Whitesides v. Green, 13 Utah, 341, 57 Am. St. Rep. 740, 44 Pac. 1032, "it may be inferred that the width of a highway acquired by user extends to the ordinary width of highways in the locality," and further, "a controversy about the width of a highway acquired by user presents a question of fact . . . and when such a case is tried by the court, without a jury, then it is a question of fact to be determined by the court." The trial court in this case, found the width of the road to be sixty-six feet, and we see no reason for disturbing this finding. Hence this road acquired by the public in 1891 or 1892 was a road sixty-six feet in width, or two rods on each side of the line.

The road was there when plaintiff purchased the land. The right of the public to claim this as a public highway had accrued years before he purchased the land and he acquired the land with this burden upon it. The order of the lower court is affirmed.

CHRISTIANSON, Ch. J., and NUESSLE and BIRDZELL, JJ., and HUTCHINSON, Dist. J., concur.

Mr. Justice BURKE, not participating in said cause, Hon. Wm. H. HUTCHINSON, Judge of the Third Judicial District, sitting in his stead.