STATE OF MONTANA, Plaintiff and Appellant, TREVOR S. POVAH and ELEANOR H. POVAH, Defendants and Appellants, *v.* MARTIN E. PORTMANN, Defendant and Respondent.

No. 11112.

Submitted December 13, 1966.  Decided January 25, 1967.

423 P.2d 56.

G. Page Wellcome, County Atty. (argued), Ben E. Berg, Jr., (argued), Bozeman, for appellants.

Lyman H. Bennett, Jr. (argued), Bozeman, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an action by the State of Montana to remove alleged encroachments and obstructions from a public road. Error is specified in the findings of fact and conclusions of law made by the judge of the 18th Judicial District, sitting without a jury, which were generally favorable to the defendant, Martin E. Portmann. Because of their mutuality of interests the plaintiff, State of Montana, and the defendants, Trevor S. and Eleanor H. Povah (husband and wife), jointly perfected this appeal.

Respondent Portmann (hereinafter called Portmann) owns the southeast quarter of the northwest quarter and the south half of the northeast quarter of Section 22, Township 13, South, Range 4 East. The appellants, Mr. and Mrs. Povah (hereinafter called Povahs), own the 120 acres adjoining the Portmann property on the north. The road in question is an east-west road and has its centerline approximately identical to the subdivision line separating the Portmann property from the Povah property.

The testimony at the trial from long-time residents of the area showed that the road was an unimproved dirt road which had developed by use to become a main road connecting West Yellowstone, Montana, with points in Idaho. It was also clearly shown that this road has for many years past fallen into a state of disuse because of other roads which were constructed in the area.

Ernest L. Romney testified that he was familiar with the road and had used it at various times from 1917 to 1938. Rom-

ney further testified that there were fences on both sides of the road but there no obstructions across the road which would have prevented the free use of the public generally.

Francis Whitman testified that his father was the Gallatin County road supervisor from 1921 to 1923 and that he had been employed under his father to help maintain the road for the county during the summer months. Whitman confirmed that there were fences on both sides of the road but no obstructions across the road during those early years.

The first official record of the road is a county plat showing a 1917 survey and the field notes of that survey. The second and last official recognition of the road is shown by an abandonment by petition in 1959 of a portion of the road. The names of Portmann and Povahs appear as three of the petitioners. There is no official record of the road being acquired by any official act of the State of Montana or by a formal dedication.

Portmann testified that when he acquired his land in 1953 there were three gates in existence across the road. Shortly thereafter Portmann constructed a corral, storage building and a privy near the north boundary of this property. The corral is admitted to have enclosed the road, and gates were provided to allow passage. Portmann further testified that when a portion of the road was abandoned in 1959 he, with the assent of the Povahs, reconstructed a gate at the western end of the abandoned portion. This gate was padlocked and only Povahs and Portmann had keys.

Portmann explained the relationship between himself and the Povahs in the following manner: "Q. Tell the court what the nature of those difficulties is? A. Well, it seems that the Povahs bought this 160 acres north of me and the original idea was she [Mrs. Povah] wanted the road closed and then she wanted it open, or she found, I guess, she couldn't close it so she wanted it open to a full 60 foot width and this has been the difficulty."

It appears that Mrs. Povah approached Mr. Drogue, chairman of the board of county commissioners, to gain his assistance to open the road. After a good deal of correspondence a notice was served on Portmann to remove encroachments. Sometime later Portmann responded by moving his corral, storage building and privy to leave a 24-foot roadway to the north. Thereafter Portmann and the Povahs were served with a summons to answer a complaint which alleged that there was a public road having a centerline on the subdivision line separating the Portmann property from the Povah property and that the road extends 30 feet on either side of the centerline and that both Portmann and the Povahs were maintaining encroachments on the alleged road. Povahs moved their fence to a line 30 feet north of the subdivision line and filed an answer praying only that the court fix the boundaries of the road.

The basic question presented by the appeal is whether section 32-106, R.C.M.1947 (repealed by Chap. 197, sec. 12-109, Laws of 1965, and substantially re-enacted by section 5-108, Ch. 197, Laws of 1965; codified as section 32-2808, R.C.M.1947), applies to public roads acquired by prescription. This case arose under section 32-106 but this opinion would not be different under section 32-2808. Section 32-106 provides: "The width of all public highways * * * must be sixty feet unless a greater or less width is ordered by the board of county commissioners on petition of the person interested * * *."

There was no dispute that the road here in question was created by prescriptive use, if at all. All parties agreed from the pre-trial conference through this appeal that the road was not created by any formal action of the State of Montana and was developed to whatever its present status may be by user alone.

The difficulty with applying a statute such as section 32-106 to prescriptive rights is that such an application is inconsistent with the general rule that the user determines the nature and the extent of the easement or title acquired.

Section 67-1203, R.C.M.1947, provides for the perfection of a prescriptive title by "occupancy" for the statutory period. Within the meaning of this section "occupancy" is also sufficient to acquire an easement by prescription.. Groshean v. Dillmont Realty Co., 92 Mont. 227, 12 P.2d 273. It is difficult to imagine in what manner land might be "occupied" with respect to an easement unless it be by actual use. This general principle was recognized in Babcock v. Gregg, 55 Mont. 317, 178 P. 284, where this court held that a ditch right gained by prescription could no more be varied by changing the size and course of the ditch than it could have been if the right had been conveyed by deed. In Ferguson v. Standley, 89 Mont. 489, 300 P. 245, it was held that a prescriptive easement for a private road is governed by the character and extent of its use during the statutory period so that the claimant was limited to the width actually used and the right to do those things which were necessary to the easement. More recently in a case dealing with a public highway alleged to have been established by prescription it was said that: "In any case the public may obtain title by adverse possession of that only which it has occupied during the full statutory period." Descheemaeker v. Anderson, 131 Mont. 322, 326, 310 P.2d 587, 589, 63 A.L.R.2d 1153.

Two cases from other jurisdictions which have considered this same question are particularly in point. Where an action was brought to have obstructions removed from an alleged public highway it was held that the width of a highway acquired by prescription must be determined as a question of fact by the character and extent of its use and may be more or less than the width of highways established by statute. State ex rel. Game, Forestation and Parks Commission v. Hull, 168 Neb. 805, 97 N.W.2d 535. While considering a nearly identical fact situation a California court held that a road which was impliedly dedicated to the public by adverse user did not fall within a statutory minimum for public roads and that the minimum width was intended only to apply to roads which were

formally laid out by the proper public authorities. Mulch v. Nagle, 51 Cal.App. 559, 197 P. 421.

■■ On the authority just stated, we hold that section 32-106 (now section 32-2808) was intended by the Legislature to apply only to public roads which were laid out by the official act of the proper public officials and was never intended to apply to prescriptive easements. We further hold that the rights acquired by adverse use can never exceed the greatest use made of the land for the full prescriptive period.

We recognize that there has been disagreement over the rules just stated. However, we find that the better reasoned cases are those which give the fullest recognition to the traditional requirements of adverse possession. For an annotation and a collection of cases on this question see 76 A.L.R.2d 535.

Appellant cites two cases, among others, in support of the contention that the statutory minimum width should be applied. Kritzberger v. Traill County, 62 N.D. 208, 242 N.W. 913, would not fall outside of the rules just stated in this opinion because the road in question was established by an official petition to the county commissioners. Yakima County v. Conrad, 26 Wash. 155, 66 P. 411, is also unpersuasive because the Washington court held that the statute was only one factor to be considered and that the width should be that which the public reasonably needs to use the easement acquired by prescription.

Appellant places greatest reliance on City of Butte v. Mikosowitz, 39 Mont. 350, 102 P. 593. This case originated as an action by the City of Butte to eject an owner of a United States mining claim from land which the City claimed to be a part of a city street. This court held that there could be no objection to the fact that the statutory 60 foot width was taken rather than the amount of land actually used by the public. The Mikosowitz case is clearly distinguishable from the instant case for the reason that it does not involve a prescriptive right. The prescription in the Mikosowitz case was held to be the means by which the public accepted a grant from the United States under

a federal statute which provided for a right of way over the public domain for public roads. Therefore, the right acquired was purely statutory with the federal statute being held to embody the terms of the state statute which fixed the minimum width of public highways.

After describing the land owned by Portmann the presiding judge further found the following facts: "3. That there is, and has been, for many years, a certain public road leading easterly and westerly across the said lands at the northerly edge thereof.

"4. That neither the State of Montana nor the County of Gallatin, State of Montana, ever acquired any easement across the said lands of the defendant Martin E. Portmann, either by condemnation or by dedication, and that the evidence in this case does not show that the public road across the said land herein-above mentioned and described, ever occupied those certain lands whereon are situate the said shed, the said barn, the said tack room, the said outdoor privy or the said corral fence.

"5. That it is not shown by the evidence in this case that the public road across the said lands ever occupied a strip of land 60 feet in width.

"6. That there is no evidence in this case that the State of Montana or the County of Gallatin, State of Montana, or either of them or the public ever occupied adversely to the rights of the defendant, Martin E. Portmann, or any of his predecessors in interest, any of the lands now occupied by any of the buildings or fences of the defendant, Martin E. Portmann, that there is no evidence in this cause that the public road ever occupied any land other than the lands now specifically occupied by the said road; that there is no evidence that the defendant, Martin E. Portmann, is now maintaining or has ever maintained any encroachment upon the right-of-way of the public for a public road."

These findings are well-supported by the evidence and are consistent with that which has been held above. Since the

road was established by prescriptive use, the 60 foot minimum width contained in section 32-106 does not apply. The record shows that the road varied in width and that the widest point known to any witness was about 30 feet.

When the judge found that Portmann's buildings and corral were not encroaching on the road in their present position he was referring to the 24 foot roadway that remained after the structures were moved. This width, and not more, is well supported by the evidence and we will not disturb that finding.

The respondent has moved to strike the bill of exceptions on the ground that the bill was filed after the time limit imposed by section 93-5505, R.C.M.1947. Since we affirm this case on its merits it is not necessary to consider this motion.

Finding no reversible error the judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, CASTLES and JOHN CONWAY HARRISON, concur.