Carl G. KEIDEL and Keith C. Keidel,
Plaintiffs and Appellees,

v.

James Clifford RASK, Defendant
and Appellant.

Civ. No. 9690–A.

Supreme Court of North Dakota.

March 25, 1981.

Fleck, Mather, Strutz & Mayer, Bismarck, for plaintiffs and appellees; argued by Russell R. Mather, Bismarck.

Benjamin C. Pulkrabek, Mandan, for defendant and appellant.

VANDE WALLE, Justice, on reassignment.

This is James Rask's second appeal to this court seeking relief from a trial court judgment declaring the width of a prescriptive road which crosses his land. We reverse the judgment of the district court and remand the case for proceedings consistent with this opinion.

In the previous case, the trial court found that the width of the road was 40 feet. In *Keidel v. Rask*, 290 N.W.2d 255 (N.D.1980), which contains the facts which we will not here repeat, we set aside that finding because it was not supported by the evidence and we sent the case back to be re-tried. In that opinion we noted that the evidence needed for an accurate determination of the width of Keidel Road was absent from the record:

> "The record was very unclear as to whether or not Keidel Road is within the Mandan city limits and, if it is, when it became part of the city. This court held, in *Kritzberger v. Traill County, supra* [62 N.D. 208, 242 N.W. 913 (1932)], that a landowner who permitted a road on his property to be acquired by prescription was presumed to have intended a road of statutory width. That case addressed a North Dakota statute in effect in 1932, but long since repealed, which required all roads to have a minimum width of 66 feet. Therefore, if Keidel Road came within the city limits before the expiration of the 20-year prescription period, it was necessary to know precisely what ordinance or requirement the city had pertaining to minimum road widths." 290 N.W.2d at 259.

After the case was re-tried, the trial court found as a fact that the road was 60 feet wide. Rask again appealed, stating as the issue:

> "Whether or not Exhibit Number 27 (Mandan City Ordinance Number 14-0406) should have been admitted into evidence, and even if it should have been admitted, whether or not this determines the width of all roads within the City of Mandan, no matter how acquired."

■ We have said that "a trial judge, in a nonjury case, should ordinarily admit all evidence which is not clearly inadmissible." *Schuh v. Allery*, 210 N.W.2d 96, 99 (N.D. 1973). We are not persuaded by Rask's argument that Mandan City Ordinance No. 14-0406 should not have been admitted. Rask also contests the trial court's decision to treat the city ordinance as controlling. In *Keidel* we alluded to the importance of official standards in ascertaining the dimensions of a prescriptive public road. However, prefacing Section 14-0406 of the city ordinance are the following words:

> "The following standards shall be observed in preparing any plat of a subdivision of the city: . . ."

■ Keidel Road is within the city limits, but the land on which it lies has not been platted. Thus we do not have the circumstances we had in *Kritzberger v. Traill County*, 62 N.D. 208, 242 N.W. 913 (1932), where a minimum width was, by statute, required for all public roads however acquired. We believe the court erred when it applied the ordinance in determining the width of the prescriptive right. But, if a judgment is supported by other findings of fact which are not clearly erroneous and which were not induced by an erroneous view of the law, that would not result in a reversal of the judgment. *Stee v. "L" Monte Industries, Inc.*, 247 N.W.2d 641 (N.D.1976). The trial court made the following findings of fact and conclusions of law:

## "FINDINGS OF FACT

"1. Note: In making these findings, the Court evaluates the courtroom evidence with some appreciation gained from an on-the-site examination of the roadway in controversy and the unusual topography;

steep hill along south side and drop-off along north side of the roadway. The tour was had the morning of June 27 in the company of both attorneys.

"2. That there exists within the City of Mandan a road commonly referred to as the 'Keidel-Rask Road'. It has as its center line a description as follows:

[Centerline description omitted.]

This road has been in existence for over twenty (20) successive years and qualifies as a public prescriptive road under the provisions of Section 24–07–01 of the North Dakota Century Code.

"3. That the prescriptive road as established is subject to the regulations and ordinances governing roads located in the City, and in particular the standards set forth in Section 14–0406 of the Ordinances of the City, which prescribes standards generally and usually observed with respect to all streets and roadways in the City.

"4. That the standards of streets and roadways and rights-of-way as provided under the Ordinances of the City and applicable to roadways in the City, provide for the following classes, rights-of-way, and roadway widths:

| Class of Street | Right-of-way | Roadway |
|---|---|---|
| Major | 80 feet | 40 feet |
| Secondary | 66 feet | 36 feet |
| Minor | 60 feet | 26 feet |

"5. That the actual traveled portion of the Keidel-Rask Road, exclusive of ditches, shoulders, and slopes varies from ten (10) to fifteen (15) feet on each side of the center line of the roadway described in Paragraph 2 above and is therefore a Minor Class street under the usual standards with respect to classification of streets in the City, and the requirements for maintenance of the actual traveled portion of said roadway necessitates a right-of-way of a minimum of thirty (30) feet on each side of the center line described in Paragraph 2 above or a sixty (60) foot right-of-way for travel and maintenance of the traveled portion.

"6. That the width required for the right-of-way of the Keidel-Rask Road is sixty (60) feet in order to provide reasonable, proper and ordinary:

"a. Ditches, Shoulders and Slopes

"b. Maintenance and Repairs

"c. Safe and Convenient Travel

"7. That witness George Toman, an engineer, says in the area of Chokecherry Lane 40 feet would not be sufficient to maintain the Keidel-Rask Road. This testimony is credible.

"8. That witness Larry Bushey, surveyor, said on cross-examination that to build a road here and maintain it properly would require in excess of 60 feet.

"9. That barricades placed within the sixty (60) foot right-of-way of the Keidel-Rask Road would interfere with the use of the Road by the traveling public, and neither the City nor other political subdivision has authorized the erection of any barricades or other impediments to travel within the right-of-way of the Road.

"From the foregoing Findings, the Court makes the following:

"CONCLUSIONS OF LAW

"1. That the Keidel-Rask Road, in the City of Mandan, is a public road created under the provisions of Section 24–07–01 of the North Dakota Century Code.

"2. That a roadway created under the provisions of Section 24–07–01 includes adjacent lands reasonably necessary for the maintenance of the road, including but without limitation such area as is necessary to provide for ditches, shoulders, and slopes, and the prescriptive road as formed under the aforesaid provision is not limited to the actual traveled area of the roadway bed.

"3. That when an owner of land permits a public road to be acquired by prescriptive use, it is presumed such owner intends a road of such width as is reasonably necessary for:

"a. Ordinary Repairs

"b. Ordinary Maintenance

"c. Convenience of the traveling public

"d.  Safety of the traveling public

"4.  That when an owner of land permits a public road to be acquired by prescriptive use, it is presumed such owner intends the road conform to roadway standards prescribed in ordinances and regulations promulgated by the governmental entity having jurisdiction of the public road.

"5.  That a sixty (60) foot right-of-way is the right-of-way necessary for the maintenance of the Keidel-Rask Road as a public road.

"6.  That a sixty (60) foot right-of-way is the right-of-way prescribed by and in accordance with the ordinance promulgated by the City of Mandan.

"7.  That placement of barricades or other interferences with the traveling public on the road is in derogation of the rights of the public in its use of the Keidel-Rask Road, inclusive of the right-of-way appurtenant, thereto, and the barricades placed thereon by the defendant constitute a nuisance, and the plaintiffs as members of the traveling public are entitled to a permanent injunction prohibiting persons acting without the authority of the City or other political subdivision from obstructing or placing of obstructions on the traveled portion or right-of-way incident to the Keidel-Rask Road."

Thus the trial court found as fact: that the Keidel-Rask road qualifies as a public prescriptive road; that the actual traveled portion, exclusive of ditches, shoulders, and slopes, varies from 10 to 15 feet on each side of the centerline; that requirements for the maintenance of the traveled way is a right-of-way of 30 feet on each side of the centerline; and that barricades placed within that 60–foot right-of-way interfere with the public use of the road.  The trial court, in finding of fact No. 5, found that the roadway is a "Minor Class" street under the provisions of the city ordinance.

In its conclusions of law the trial court determined that the 60–foot right-of-way is necessary for the maintenance of the road as a public road.  It further determined that a 60–foot right-of-way is the right-of-way prescribed by and in accordance with the city ordinance.  If the trial court relied solely upon the city ordinance in determining that the width of the road in question was 60 feet, that determination would be in error because, as we have already noted, the ordinance applies standards to be observed only when a plat is prepared for a subdivision in the city.  There is, however, other testimony to support the trial court's finding that a 60–foot right-of-way is necessary for the maintenance of the roadway.  At the hearing conducted to determine the precise width, the Keidels presented the engineer who had made the plat drawing for the City.  He testified as follows:

"Q.  I see.  All right.  Mr. Toman, you have done work and designed roads for the City of Mandan and for other cities in the area of Morton County and of other counties as a consulting engineer;  is that not correct?

"A.  That is correct.

"Q.  Now, when we talk about a roadway, what width are we talking about which is necessary for the maintenance of that roadway?

"A.  A roadway itself is made up generally of the travel surfaces, the shoulders, and a rural section, or that is slopes.  There is a ditch line, and it has backslopes.  And its total width would vary, and a great deal would depend on the terrains.  The minimum, if we look at a 28–foot top, what we call the travel lane, plus roughly a foot and a half of shoulders on each side, and then your slopes to the ditch.

"Q.  Well, is there a formula which is used in relation to slopes, to surface and to slopes and to ditches for the maintenance of roads?

"A.  Yes, sir.

.    .    .    .    .

"THE WITNESS:  The slopes are such that have been accepted in practice and are now used.  The slopes shall be of such a nature that it is possible to maintain it with mowers or mechanical equipment, so minimum slope is three to one, preferably four to one, or one to four, which means that for

each three feet or four feet we go out, we would have a one-foot rise, or a one-foot depression, depending on which side—what was the terrain on either side.

"Q. Well, in a roadway, is there a term used when you consider right of way as opposed to purely roadway?

"A. Well, when we speak in engineering survey parlance, when you speak of a road as such, you are talking property line to property line, or the roadway or the traveled way is to distinguish it from what would be a road. In street work it is from property line to property line, and it pretty much carries on through in the rural sections.

"Q. Well, assuming that you had a traveled roadway on a dirt or a scoria road, and assuming further that that road was located within the City of Mandan, and assuming further that you were going to maintain that road in a proper condition so that it could be used for vehicular traffic, if the road was 22 feet, the traveled roadway, what would be the distances necessary from an engineering standpoint to properly maintain that road?

"A. Well, you would need an additional three feet for the shoulders, roughly. That is using a minimum roadway width of a foot and a half on each side. And then you would have, if the roadway is going to be above ground, let us say, two feet, you would need an additional—using the minimum slope of one to three—you would need an additional six feet on either side. And in the ditch where proper—where the minimum width of that would be probably—that would vary between two and three feet. If there is an appreciable runoff or rapid runoff, it would have to be wider in an attempt to slow down the velocities and put in structures to take care of that, then you would have—on a hillside, you would have an additional sloping to the property line, which varies depending on the height. And let us assume that the property is four feet above, you would then, again using a minimum slope, need an additional twelve feet on the upslope side, downslope side.

To preserve the road and maintain it. You would require, probably, at least—

. . . . .

"THE WITNESS: —at least the same slopes.

"Q. [Mr. Mather continuing] Mr. Toman, in the City of Mandan, and over the years which you have been the City Engineer, were there minimum specifications for right of way width of roadways?

"A. Yes, sir.

"Q. And do you know how and where those widths were arrived?

. . . . .

"A. The rule or the ordinances were prepared, to the best of my knowledge, were started in the forepart of the 1950's, because of the developments that were being—that were taking place in the City of Mandan, both rural areas, or the outskirts, and within the city itself. Historically, there was an inconsistency in plattings, because—

. . . . .

"A. [Continued] The widths have varied from some instances twenty-five feet to as wide as a hundred and twenty feet, and some standardization was requested. In may capacity, administrative capacity, I assisted in drawing up an ordinance which was in keeping with what was being used in North Dakota at the time.

"Q. [Mr. Mather continuing] In keeping with that ordinance, is that the ordinance that is contained in Exhibit 27? Do you want to review that?

"A. Yes, sir. What I am looking at here are certified as extracts of an ordinance governing the platting and design of the streets within subdivisions within the City of Mandan and they are the same numbers that I helped prepare.

"Q. What were those widths that were applied then?

. . . . .

"A. The class of street—there were three items under which the paragraph 11 of this Chapter 40—or Chapter 14 were set forth. The class of streets was major, sec-

ondary and minor. And the right of way was listed there for a major street as 80 feet, with a roadway width of 40 feet; and the secondary road with a right of way of 66 feet with a roadway of 36 feet; and a minor street with a 60 foot right of way and a roadway of 26 feet.

"Q. So the roadway and the right of way have been historically in the City of Mandan then related; is that correct?

"A. Yes, sir.

"Q. Now, you have had an opportunity to examine the Keidel-Rask road, which is the subject matter of this litigation. And could you express an opinion, based upon your knowledge of roadway construction, as to the necessary width that it would take to maintain the Keidel-Rask roadway in a proper condition?

"A. Based upon where the section is taken, that width can vary. The roadway width, assuming slopes and those things would be necessary, we are looking at somewhere in the neighborhood of between 38 and 40 feet.

"Q. On the top? On the traveled portion?

"A. Not the traveled portion. Approximately 28 feet, sir.

"Q. The traveled portion, 28 feet, and the roadway or the right of way 38, 40 feet?

"A. Not the right of way. That would be necessary for the dips and the back ditches and the backslopes.

"Q. What would be the difference for the right of way as opposed to the roadway?

"A. It should be in excess of that. In this instance, as set up by ordinance, it is 60 feet.

"Q. Sixty feet?

"A. Yes.

"Q. Well would you feel that this road could be properly maintained with a right of way with less than 60 feet?

"A. Certain areas of it, no.

"Q. Now, you are familiar with the area around the Chokecherry Lane intersection; is that correct?

"A. I am.

"Q. Would you say at that point on the Keidel-Rask roadway that 40 feet would be sufficient?

"A. Forty feet would not be adequate.

"Q. In order to maintain the road, then, in your opinion, the land reasonably necessary for ditches, slopes, and shoulders would include approximately 60 feet of right of way?

"A. It would have to take off the private property; right."

Although this testimony may be adequate to support the trial court's findings of fact from an evidentiary standpoint, we believe the testimony, coupled with an erroneous view of the law, led to an error in the trial court's judgment.

There is considerable dispute among the various jurisdictions as to the question of the width or boundaries of public highways acquired by prescription or user. Those different views are summarized in an annotation in 76 A.L.R.2d 535. As that annotation notes, a variety of circumstances in the particular cases cited therein account to some extent for this disagreement. Although it would serve little purpose to attempt to analyze the individual cases cited in the annotation, the annotation does point out that while there is some authority to the effect that a highway acquired by prescription is no wider than the beaten or traveled path, a majority of the cases discussing the matter take the contrary view. There is some authority for the conclusion that the width of boundaries of a prescriptive public highway rests upon the determination of the width necessary for the convenience of the public. There is also authority for the proposition that the width of a public highway acquired by prescription or user may be extended beyond the traveled part for purposes of improvement or repair, but the cases are not in agreement as to whether or not additional width may be

added to the highway in this manner.[1] Prior to our statements in *Keidel v. Rask, supra,*[2] this matter has not been discussed in detail in the previous decisions of this court.

We are impressed with the decision of the Minnesota Supreme Court in *Barfnecht v. Town Bd. of Hollywood Tp.*, 304 Minn. 505, 232 N.W.2d 420 (Minn.1975), wherein the Supreme Court was considering a constitutional challenge to a Minnesota statute (Minn.Stat. § 160.05, subd. 1) that provided that when any road had been used and kept in repair and worked for at least six years continuously as a public highway, the highway was deemed to be dedicated to the public to the width of two rods on each side of the centerline thereof. The road in question was maintained as a public road for a number of years and was deemed a public road. The defendant township attempted to improve the road including backsloping. Easements were sought from the plaintiffs as adjoining landowners but they refused to give such easements. The Township proceeded with construction and plaintiffs instituted an action for injunctive relief or damages. The trial court, relying upon the statute, found that the road acquired by

public use was dedicated to a width of four rods. The plaintiffs appealed, alleging that the statute violated the Fourteenth Amendment of the United States Constitution and Article 1, Section 2, of the Minnesota Constitution, prohibiting the taking of property without due process of law. In reversing the trial court the Minnesota Supreme Court stated:

"As a result of the constitutional provisions cited above, we hold that Minn.St. 160.05 does not authorize a township to widen a road acquired by adverse public use beyond that width actually acquired by such adverse use. Privately owned land cannot become public road by adverse use beyond the portion so used merely by a statutory pronouncement to that effect.[3]

"A dedication resulting from adverse public use arises from the fact that such use serves to give the owner notice that, if he means to dispute the rightfulness of the public use, he must assert his right within a statutory period by physical action or suit. The statute provides a statute of limitations, the running of which

"The width of a prescriptive public road established in the absence of a law specifying its width is determined from the extent of the actual use of the property for roadway purposes over the prescriptive period. We think this width necessarily includes not only the actual traveled surface area of the roadway, but also any adjacent land which is needed for the prescription to be maintained as a public road, including any land reasonably necessary for ditches, shoulders, and slopes." 290 N.W.2d at 258.

---

1. In *State v. Portmann*, 149 Mont. 91, 423 P.2d 56 (1967), the Montana Supreme Court held that the rights acquired by adverse user can never exceed the greatest use made of the land for the full prescriptive period. In discussing the divided authorities the Montana court stated:

"We recognize that there has been disagreement over the rules just stated. However, we find that the better reasoned cases are those which give the fullest recognition to the traditional requirements of adverse possession. For an annotation and a collection of cases on this question see 76 A.L.R.2d 535." 423 P.2d at 58.

See also *Eager v. Mackie*, 376 Mich. 148, 136 N.W.2d 16, 19 (1967), holding that "The acceptance, by user, cannot exceed the amount of actual or implied dedication."

2. In *Keidel v. Rask*, 290 N.W.2d 255 (N.D. 1980), we stated:

"As a general rule, the extent of an easement by prescription is fixed by the use through which it was created, and no use can be justified under a prescriptive easement unless it can fairly be regarded as within the range of privileges asserted by the adverse user and acquiesced in by the owner of the servient tenement. [Citations omitted.]

3. In *Kritzberger v. Traill County*, 62 N.D. 208, 242 N.W. 913 (1932), no constitutional issue was raised concerning the application of the statute which formed the basis for the court's opinion. Although the court's opinion in *Kritzberger* does not determine whether or not the road was acquired by dedication or prescriptive use, the facts indicate that there was a petition to lay out a road, which was granted, without specifying the width thereof. Here, Rask has not raised a constitutional question. Article I, Section 16, of the North Dakota Constitution specifies that private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner.

estops an owner from denying the existence of a public easement.

"Public use cannot be said to apply to lands not actually used. There is no reason that an owner should know that he is required to dispute the rightfulness of a nonexistent user. A property owner thus receives no notice as to a public claim on any property in excess of that which has actually been used. Thus, a dedication by public use cannot constitutionally exceed the amount of actual dedication. [Citations omitted.]

"As a result, § 160.05 may operate to dedicate a road by public use only to the extent of actual use over the statutory period. The boundary of a public highway acquired by public use is a question of fact to be determined by the appropriate finder of fact. [Citations omitted.] The width of the prescriptive easement, however, is not limited to that portion of the road actually traveled; it may include the shoulders and ditches that are needed and have actually been used to support and maintain the traveled portion. [Citations omitted.]

"While our decision today will limit the dedication of public roads by adverse public use to the actual extent of such use, it will not prevent governmental bodies from upgrading, widening, or improving public ways. A governmental body may always accomplish such goals by the process of eminent domain. Eminent domain proceedings, however, effectively provide private landowners with notice, due process of law, and the opportunity to secure just and fair compensation in return for the property taken." 232 N.W.2d at 423–424.

■ We agree with the rationale expressed by the Minnesota Supreme Court as to the width of the prescriptive easement, i. e., that it includes the portion of the road actually traveled as well as the shoulders and ditches that are needed and have actually been used to support and maintain the traveled portion.[4] We are also in agreement with the Minnesota court's rationale that public bodies which wish to improve public ways by widening but are unable to acquire the necessary right-of-way by dedication from adjoining owners should acquire the right-of-way that is needed by eminent-domain proceedings. A public body which acquires a road through purchase or eminent-domain proceedings and finds it necessary to improve the road through widening must, of course, acquire the additional right-of-way by again purchasing or using eminent-domain proceedings. In contrast, we do not believe that additional right-of-way needed to maintain a road acquired by public use, but not theretofore improved, can be acquired simply by testimony of an official of the public body that, because of larger machinery, increased public travel, etc., the additional right-of-way is "necessary" for maintenance, convenience, or safety of the traveling public.

■ The trial court's findings appear to be based upon the city ordinance as well as upon the testimony of the witnesses that 60 feet is necessary to provide reasonable, proper, and ordinary ditches, shoulders and slopes; maintenance and repairs; and safe and convenient travel. Because the city ordinance is applicable only to roads in platted areas and because Keidel Road is not located in a platted area, the conclusions of law based upon that ordinance are in error. Those conclusions of law based upon the testimony of witnesses that 60 feet is necessary for the maintenance of Keidel Road as a public road are also in error as being induced by an erroneous view of the law, i. e., that the amount of right-of-way necessary for the maintenance of Keidel Road as a public road is the governing standard to be applied to a road acquired by public use.

---

**4.** In *Keidel v. Rask, supra*, three witnesses testified at the hearing as to the width of Keidel Road from a "toe-to-toe" measurement of the portion actually traveled, but we observed:

"Neither of these measurements took into account anything other than the actual traveled surface area of the roadway, but photographs taken of the area and admitted into evidence revealed that there were ditches and roadside slopes which we believe should have been considered in determining the width of Keidel Road." 290 N.W.2d at 259.

■ There are no findings as to the actual use of the traveled portion of the roadway including the ditches and slopes actually used. There is only a finding that the actual traveled portion of Keidel Road, exclusive of ditches, shoulders, and slopes, varies from 10 to 15 feet on each side of the centerline of the roadway. Mr. Bushey, a witness for Rask, did survey the portion of the road actually traveled along with the ditches, shoulders, and slopes, but the trial court made no findings thereon other than a finding that the portion of Keidel Road actually traveled, exclusive of ditches, shoulders, and slopes, varies from 10 to 15 feet on each side of the centerline of the roadway. It is apparent that the actual width acquired by public use will not be a uniform 60 feet from beginning to end.[5]

Because the trial court made no findings concerning the portion of the road actually traveled as well as the shoulders and ditches that are needed and have actually been used to support and maintain the traveled portion for the required statutory period of time,[6] we remand for findings as to those facts. The trial court may either prepare findings based on the current record, if it determines the evidence adequate and credible, or the trial court may, if it determines it to be necessary, grant a new trial.

ERICKSTAD, C. J., and PAULSON, J., concur.

SAND, Justice, specially concurring.

I concur in the result and generally with the case law discussed in the opinion authored by Justice Vande Walle, but because of the unique situation I believe some additional comments and observations are appropriate in this case.

One of the real parties of interest even though not named as a party litigant is the City of Mandan. Unfortunately, the material interests of the City of Mandan have not been brought out or developed except indirectly by employees or officials of the City as witnesses.

Appellant James Rask, from all indications, used the Keidel road to his advantage and when it appeared some of his property was involved or could be impressed with a public use he changed his position substantially.

The Keidel road has been determined to be a prescriptive road. The only question remaining is its width. It will be interesting to observe if Rask will use the Keidel road once this litigation is over. It is also interesting to note that Keidel, who is to stand to lose most of the land to the prescriptive road, is not taking any adverse position to the question under litigation.

The majority opinion relies heavily upon *Barfnecht v. Township Board of Hollywood Township,* 304 Minn. 505, 232 N.W.2d 420 (Minn.1975), and the statement "public use cannot be said to apply to lands not actually used. . . ." The term "actually used" is not synonymous with "surface actually trav-

---

5. The width of the portion of the road actually traveled, exclusive of ditches, shoulders and slopes, varies from 10 to 15 feet. The evidence reveals that the ditches, shoulders, and slopes also vary along the length of the road. The adoption of a uniform width of 60 feet is, in view of this evidence, an indication that the area acquired by public use is not a uniform 60 feet. In order to establish a uniform width of 60 feet it would be necessary, according to the evidence, to remove some trees in at least one spot along the roadway. The rule that fences, walls, trees, or other monuments maintained along a public highway acquired by public use mark the limits or boundaries of the highway has been applied or recognized in many cases. For an annotation on those cases see 76 A.L.R.2d 548 et seq.

6. In *Keidel v. Rask, supra,* we noted that if the City had no minimum road width requirement or if Keidel Road was not in the city limits at the end of the prescription period, there was no evidence to indicate that 40 feet (the width determined by the trial court in that instance) was the correct width of the easement. We further stated:

"We do not believe that a 'toe-to-toe' measurement of the traveled portion, without anything more, was sufficiently accurate to determine the width of a prescriptive use. Because the width of a prescriptive road easement under § 24–07–01, NDCC, must be determined by the extent of actual use over the prescriptive period, the trial court must determine the accurate dimensions of that use." 290 N.W.2d at 260.

eled." The term "actually used" out of necessity must include the shoulders, ditches, and slopes that are needed to support the actually traveled surface. In this respect the findings of fact are lacking and maybe the evidence is also lacking. Be that as it may, I don't believe a super-technical application regarding the width of the road is intended. Rather, a pragmatic sensible approach is more appropriate.

The instant case does not involve a road by prescription out in the country or wide open spaces, but rather a road within the city limits. The very road being contested by one of the parties may well be the road that will give, or gives, value to the parties' adjacent property. This can be illustrated by asking the rhetorical question, "Who would object the strongest or loudest if the city decided to abandon the road?" It wouldn't be surprising if it were the party that now objects the strongest to the width of the prescriptive road involving a small part of his land.

Technically, the road in question is not a platted road and as such the ordinance does not apply, but the benefit to the adjacent landowner is the equivalent as if the road were a platted road. It is similar to an area designated as a development area within the city limits. This is an instance where the party attempts "using" the law to avoid a contribution to a development area which is to the party's benefit or from which the party expects to benefit.

To me a certain inconsistency exists in the rationale and position advocating and holding the road down to the narrowest conceivable width because of technicalities, and then suggest if a greater width is needed that it be obtained by eminent domain at a cost to the public where the overwhelming benefit inures the landowner involved in the dispute about the width of the road. To me this is a situation which is comparable to a developer of an area within the city limits.

I do, however, agree that the findings need to be attuned to the actual situation if the evidence is there to support the finding. If, however, the evidence is inadequate a further evidentiary hearing should be held.

PEDERSON, Justice, dissenting.

Although I agree that Justice Vande Walle has properly stated much of the law applicable to determinations of the width of prescriptive roads, I think he has misapplied it to this case. First of all, I believe that the Minnesota case, *Barfnecht*, cited and relied upon in the majority opinion should be distinguished and should not apply here. A roadway through flatlands does not require the lateral support that is obviously required when the roadway is traversing a slope, such as is shown on the photographs in evidence in this case.

Secondly, findings of fact are entitled to a presumption of correctness under Rule 52(a), NDRCivP. See, 9 Wright and Miller, Federal Practice and Procedure, Civil § 2585. Rask did not overcome any presumption. He failed to criticize any of the findings of fact. Appellate courts ought to let the attorney for the appellant state what issues he raises on appeal. Only then can appellees respond appropriately.

After answering both of Rask's questions—as they have been, in effect, answered in the majority opinion—the judgment should be affirmed. (1) Was it reversible error to admit into evidence Exhibit Number 27? The answer is "no." (2) Does the Mandan ordinance determine the width of all roads in Mandan? The answer is "no." If Rask's comment that the trial court treated the Mandan ordinance as overriding—really also raises a separate issue—I would dispose of that without comment because it is not borne out in the findings of fact or conclusions of law.

The finding of fact that the maintenance of the Keidel-Rask road requires a 60-foot right-of-way is not based on a misinterpretation of the ordinance. There is engineering opinion that that is the minimum needed. I do not agree that trial judges should have to make negative findings in order to prove to us that the decision is not based upon an erroneous view of the law.

The Keidel-Rask road is a short road. It would be impractical to require witnesses to

say that a varying right-of-way width is required for maintenance. Likewise, it would be inappropriate for them to testify that the width should be 59 feet or 61 feet merely to prove that the ordinance was not being misapplied.

Finally, it is my opinion that the majority opinion fails to afford appropriate consideration to the effect on appellate review when there has been a viewing of the premises. If viewing witnesses make the trial judge the final judge of the credibility of their testimony, certainly a view of the premises gives the trial judge some advantages that we do not have when the lay of the land is a significant factor. See, *Dobler v. Malloy*, 214 N.W.2d 510, 514 (N.D.1973); *Little v. Burleigh County*, 82 N.W.2d 603, 607 (N.D.1957); *Roberts v. Taylor*, 47 N.D. 146, 181 N.W. 622, 626 (1921); 20 Am. Jur.2d, Courts, § 40; 76 Am.Jur.2d, Trial, § 1247; 83 CJS, Stipulations, § 26a, n. 17; and 18 A.L.R.3d 572.

Neighborly road disputes, like *Hatfield v. McCoy*, have a tendency to continue from one generation to the next. This one ought to end here and now.