2009 OK CIV APP 24

Bobby FENNELL, Plaintiff/Appellant,

v.

Kent WILSON, J.D. McCrary, Maxine McCrary, and Hazel Lee, Defendants/Appellees.

No. 102568.

Court of Civil Appeals of Oklahoma, Division No. 4.

July 6, 2007.

Gerald C. Dennis, Dennis & Branam, Antlers, Oklahoma, for Appellant.

Jim McClendon, Jim McClendon–Lawyer, P.C., Broken Bow, Oklahoma, for Appellees.

JOHN F. REIF, Judge.

¶ 1 This appeal arises from a suit brought by Bobby Fennell to determine whether a road that crosses the property of Kent Wilson, J.D. & Maxine McCrary, and Hazel Lee is a public road by prescription. Mr. Fennell is a neighboring landowner who desires to use the road to access his property. Mr. Fennell sought to resolve the status of the road because Mr. Wilson placed locked gates at the points where the road enters the defendants' land.

¶ 2 Although all of the parties grew up on tracts of land along the road, and have lifelong acquaintance with the road, they did not acquire any legal interests vis-à-vis the road until the 1970s. Mr. Wilson, Mrs. McCrary, and Mrs. Lee acquired their respective tracts in 1970 following the death of their mother, Ludie Wilson. Mr. Fennell acquired his tract from his stepfather in 1975.

¶ 3 At trial, no evidence was presented concerning the origin of the road. However, Mr. Fennell, Mr. Wilson, Mrs. McCrary, and Mrs. Lee all related childhood memories of the existence and use of the road in the 1940s and 1950s. Mr. Fennell remembered the road was generally used without permission by a church camp and families that lived along the road, including his family. He identified the Coopers, the Stewarts, the Phelps, and the Belks as neighboring families that used the road. He also related that the Smith Brothers hauled logs on the road. He further recounted that the road was graded and maintained by the county.

¶ 4 Mr. Wilson, Mrs. McCrary, and Mrs. Lee likewise remembered the road was used without permission by families living along the road, including their family. According to Mr. Wilson, "anybody" and "everybody" used the road.

¶ 5 Mr. Fennell also presented six non-party witnesses. The first non-party witness, Pete Smith, testified he was an employee of a county commissioner from 1962 to 1974. He related that he graded and maintained the road during the period of his employment.

¶ 6 Two non-party witnesses, Quart Cooper and Maxine Stewart, testified that their families lived along the road and used the road without permission from anyone who lived along the road. Mr. Cooper lived along the road in the 1940s, while Mrs. Stewart lived along it in the 1950s. Mrs. Stewart remembered seeing the county maintain the road.

¶ 7 The remaining non-party witnesses did not live along the road, but testified they used the road without asking permission from anyone who did live along the road. Jesse Donaldson testified he and his father used the road to haul logs, posts, and poles in the late 1950s through the mid–1960s. He related he saw other trucks hauling timber on the road during this same time period. He also regarded the road to be a "public road" and saw the county maintaining the road up until the mid–1960s.

¶ 8 Jim Burton testified he first became familiar with the road in the early 1950s from using it to go fishing. He related the road was used by people who lived along the road, hunters and fishermen, and people hauling logs. Mr. Burton remembered seeing the county maintain the road with equipment in the 1960s. He stated, on both direct and cross-examination, he thought the road was a "county road."

¶ 9 Eddie Walker testified he was fifty years old at the time of trial and began using the road when he was nine to go hunting in the area. He stated, as far as he knew, the road was a "county road all these years." He acknowledged that he had not used the

road since the defendants installed gates in the 1990s.

¶ 10 The trial court ruled the road was not a public road. In reaching this decision, the trial court gave great weight to the fact that the board of county commissioners has never formally recognized the road as a county road. The trial court noted the road did not lie on a section line nor had it been opened, condemned, dedicated, or even inventoried for maintenance. The trial court found it significant that the county was not a party to the suit. The trial court also gave great weight to the fact that the road crossed unenclosed land during its early use. The trial court relied on case authority that recognizes that owners of unenclosed land generally allow use of roads on their land in the spirit of a good neighbor policy. Finally, the trial court ruled that the lack of a legal description of the road was fatal to Mr. Fennell's claim of an easement by prescription.

¶ 11 A case to establish a highway by prescription is an "equitable action [in which an appellate court is] required to weigh the evidence ... but it will not reverse the judgment unless it is clearly against the weight of the evidence." *Seaman v. Chesnut*, 1937 OK 508, ¶ 5, 180 Okla. 582, 71 P.2d 965, 966 (citations omitted). Despite the trial court's thorough and thoughtful consideration of the law and evidence, we have concluded, upon weighing the evidence, that the trial court's judgment is clearly against the weight of the evidence.

¶ 12 In ruling that the road in question is a public road by prescription, we acknowledge that the reasoning and findings by this court differ from the reasoning and findings by the trial court in several important respects. However, in cases of equitable cognizance, an appellate court is "bound neither by the reasoning nor by the findings of the trial court [and] must render, or cause to be rendered, that judgment which in its opinion the trial court should have rendered." *Estate of Bartlett*, 1984 OK 9, ¶ 4, 680 P.2d 369, 374 (footnote omitted).

¶ 13 First, we believe the trial court gave undue weight to the absence of official recognition of the road as a county road.

While official recognition of the road would have weighed in favor of a finding that the road was a public road, the absence of such recognition does not foreclose others who are interested in public use of the road from establishing and enforcing the public's right to use a road. It has long been recognized that a landowner who uses a road to access his land may maintain an action to establish that the road is a "highway" acquired by prescription. *Liggett v. Peck*, 1946 OK 140, 197 Okla. 74, 168 P.2d 622 (per curiam).

¶ 14 Second, we believe the trial court similarly gave undue weight to the fact that the road crossed unenclosed land during the early use of the road. While this is certainly a relevant consideration, it is far less important than the evidence that the road was graded and maintained by use of county equipment from the 1940s through 1974. To be sure, there is no evidence that this was the result of formal action by the board of county commissioners; however, it cannot be presumed that the county maintenance of the road was intended to benefit just the private land abutting the road. The evidence as a whole supports very strong inferences that (1) the county maintained the road to benefit public use of the road, and (2) there was sufficient public use of the road to warrant county maintenance at least until 1974.

¶ 15 The trial court's focus on the lack of official recognition of the road and the unenclosed nature of the land it crossed is most likely the reason the trial court did not consider other factors that indicate the road was a public road. One such factor is that use of the road was not confined to local travel by neighboring families. The road was used at will by persons in the timber industry and by hunters and fishermen. The level and variety of traffic on the road, coupled with county maintenance of the road, led three nonparty witnesses to conclude the road was a "public road" or a "county road." In recent years, the road is also depicted on several maps that are available to the public and those maps do not show any restriction in use.

¶ 16 Another factor that is entitled to weight is the length and route of the road. The southern terminus of the road has al-

ways been State Highway 3 in McCurtain County. It runs from State Highway 3 through six sections in Township 4 South, Range 21 East, in McCurtain County. After leaving McCurtain County, the road continues into Pushmataha County to points identified as the James Ranch School House and Signal Mountain. Prior to the development of a lake on Little River in the 1960s, the road ran past a ford on Little River that provided access to the old town site of Ringgold. Mr. Fennell related that he and his family regularly used the road to travel to the post office and store in Ringgold. Mr. Wilson also remembered using the road to travel to old Ringgold. The fact that the road linked a town and a state highway would account for early use of the road by persons other than neighbors along the road.

¶ 17 It is likewise significant that Mr. Wilson, Mrs. McCrary, and Mrs. Lee did not acquire title to their property until 1970 upon the death of their mother, Ludie Wilson. While they have contested any use of the road without their permission since 1992, there is no evidence that their mother and her predecessor in title ever contested use of the road by non-neighbors or the county's maintenance of the road between the 1940s and 1970. Similarly, there is no evidence that Mr. Wilson, Mrs. McCrary, or Mrs. Lee contested county maintenance of the road between 1970 and 1974, or use of the road by non-neighbors for the twenty-two-year period between 1970 and 1992.

¶ 18 The clear weight of the evidence shows unrestricted travel by the public on the road from the 1940s to 1992, and maintenance of the road by the county from the 1940s to 1974. These activities are substantial adverse uses and impart knowledge that they occur by color of right. Both public travel and county maintenance were continuous and uninterrupted from the 1940s to 1974—a period that far exceeded the prescriptive period of fifteen years. Even after coun-

ty maintenance was discontinued in 1974, "anybody" and "everybody" continued using the road another 18 years until Mr. Wilson installed the gates in 1992.

■■ ¶ 19 It is well settled that "[a] public highway may be established by prescription in Oklahoma if the land is actually used by the public for that purpose, with knowledge of the owner, actual or implied, adversely under a claim or color of right and not merely with the owner's permission, and continuously and uninterruptedly for the period required to bar an action for the recovery of the possession of land or otherwise prescribed by statute." *Seaman,* 1937 OK 508, ¶ 0, 180 Okla. 582, 71 P.2d 965 (syllabus 2). It is equally well settled that it is not necessary to show that the public's use of the road began without permission of the landowner in cases where the contesting landowners acquired their title after the prescriptive period had already passed. *Hervey v. Board of County Comm'rs of Bryan County,* 1962 OK 266, 377 P.2d 56.

■ ¶ 20 We also disagree with the trial court's view that public rights to the road may have been abandoned, because the county ceased maintaining the road in 1974. However, to avoid abandonment, it was not necessary for the county to continue maintaining the road, it was only necessary that the public continue to use the road to travel. There is no evidence that the public ceased using the road after the county discontinued maintaining the road. Indeed, the testimony of Mr. Wilson, Mrs. McCrary, and Mrs. Lee clearly indicates public use continued until 1992, which caused them annoyance in the form of trash and other activity.

■ ¶ 21 We further disagree with the trial court's conclusion that relief could not be granted without a legal description of the road or the land it crossed.[1] The primary

---

1. The trial court relied on *James v. Board of County Comm'rs of Muskogee,* 1999 OK CIV APP 47, 978 P.2d 1002, to support denial of relief for lack of a legal description of the road. The *James* case, in turn, relied on the case of *Brown v. Mayfield,* 1989 OK CIV APP 32, 786 P.2d 708, which involved a private easement by prescription. In this latter case, a legal description of the easement, together with the property burdened and the property benefitted, is essential because the owner of the dominate estate acquires a legal interest in the servient estate. Such is not the case, however, with a public road by prescription. In the case of a public road by prescription, the public acquires a mere right of way on a route that is physically defined by use.

reason we disagree is that there was never any dispute between these parties over the presence of the road on defendants' land, the route it follows, or the description of defendants' land. Once the public acquired the right to use the defined path of the road, it is defendants' burden to show that the public's use of the road exceeds the scope of right of way acquired by prescription. A legal description may be relevant in such a case. While the defendants did testify that unlawful deposits of trash have accompanied public use of the road in recent years, they did not show public travel outside of the roadway in question.

¶ 22 When the public's right to travel a road is an issue in a case, the chief concern is not the formal legal description of the road, but rather its route and width. Again, there is no dispute over the route the road in question follows over the defendants' land. The only unanswered question affecting enforcement of the public's right in this case is the width of the road.

¶ 23 Because the road in question is based upon public use of the road for a prescriptive period, its width is determined by the public's use. The United States Supreme Court long ago observed "[r]elying for right of way on use, the right could not extend beyond the use." *District of Columbia v. Robinson*, 180 U.S. 92, 100, 21 S.Ct. 283, 286, 45 L.Ed. 440 (1901). More recently, the Supreme Court of Montana has held "the rights acquired by adverse user can never exceed the greatest use made of the land for the full prescriptive period." *State v. Portmann*, 149 Mont. 91, 423 P.2d 56, 58 (1967). This is a generally accepted rule, Annotation, *Highway—Width and Boundaries*, 76 A.L.R.2d 535, 540, § 4 (1961); however, width based on use is not confined to the beaten or traveled path. *Id.* at 544, § 5.

¶ 24 According to the evidence, the greatest use made of the road in question was by a road grader. The extent of the public's right to use the road in question is a width sufficient to allow passage of a road grader. While photographs in the record shed some

light on the width of roadway, they are not sufficient to enable this court to determine the width of the road. Given the fact that we are reversing and remanding, we direct that the trial court conduct further proceedings to determine the width of the roadway in question.

¶ 25 The final point we wish to address is the effect on the Board of County Commissioners of McCurtain County of finding the road to be a public road. We are cognizant that the county ceased maintaining the road in 1974, and has never formally recognized the road. We are also aware the county did not participate in this case. It is reasonably clear that the county does not want the burden of maintaining the road in question. However, the finding that the road is a public road by prescription does nothing more than declare and enforce the public right to travel on the road. It does not *ipso facto* cast a burden on the county to maintain the road.

¶ 26 The statutory duty of the board of county commissioners to maintain public roads is limited to "those roads which best serve the most people of the county." 69 O.S.2001 § 601. The Board of County Commissioners of McCurtain County has discretion in deciding whether a particular "public road" meets this criteria. It is reasonably clear that the Board believes the road in question does not meet this criteria. In short, this court's finding that the road is a public road in no way affects the responsibility or position of the Board of County Commissioners of McCurtain County concerning the road in question.

¶ 27 For the reasons discussed in this opinion, we reverse the trial court's judgment that the road in question (variously referred to as Old River Road and Five Mile Road) is not a public road by prescription. We hold the clear weight of the evidence demonstrates that the road is a public road by prescription and remand with directions for the trial court to determine the width of the road and enter a judgment necessary to prevent defendants' interference with public use of the road.

While a legal description may be helpful or desirable to foreclose future disputes, a legal description is not essential for the public and landowner to discern the location and limits of the right of way.

¶28 REVERSED AND REMANDED WITH DIRECTIONS.

GABBARD, P.J., and GOODMAN, J., concur.