60 So.2d 909

### HUGGINS v. TURNER.

### 4 Div. 694.

Supreme Court of Alabama.

Oct. 16, 1952.

James G. Clower, Troy, for appellant.

8

Oliver Brantley, Troy, for appellee.

STAKELY, Justice.

The question to be determined in this case is whether the road which is involved, is a public road. A bill in equity was filed by James Turner (appellee) against William Huggins (appellant) to enjoin the obstruction of a roadway which runs across land owned by William Huggins. A tem-

porary injunction was granted. There was answer and a motion to dissolve the injunction. The motion was not insisted upon and the case proceeded to final decree, it being agreed that the only issue was whether or not the road was a public road. The case was tried orally before the court with the result that the court entered a final decree making the injunction permanent.

The evidence is rather voluminous and it is not practical to state it in detail, although it has been carefully considered. The evidence may be briefly summarized as follows. The Troy-Montgomery Highway, U. S. 231, crosses Conecuh River about three miles north of Troy. A short distance north of the river a road branches off from U. S. 231 to the east, curves north and runs roughly parallel with U. S. 231 several miles, then curves back westerly through Sections 30 and 25 to U. S. 231, through lands owned by the parties to this cause, serving a number of farms along the way. In other words, the road makes a loop of about 4½ miles from where it leaves U. S. 231 north of Conecuh River, coming back into U. S. 231 through the lands of the parties to this cause. James Turner owns the West Half of the NW Quarter of Section 30, Range 21 and William Huggins owns the NE Quarter of Section 25, Range 20, lying between the lands of James Turner and U. S. 231.

The curving road, to which reference has been made, is also connected with U. S. 231 by another road about halfway between the river and the lands of William Huggins, which runs to a dead end. This last-mentioned road was not passable except in dry weather when the suit was filed. It is about a half mile from the home of James Turner to U. S. 231 over the road involved in this suit. It is about a mile and a half over the dead end road and about four and one-half miles to the point where the road leaves U. S. 231 just north of Conecuh River.

The part of the road which is the subject of this suit runs westerly from the lands of James Turner through the NE Quarter of Section 25, which is now owned by

William Huggins. The road runs approximately on the line separating the north half of the quarter section from the south half. William Huggins and his predecessors in title did not originally own the east half of this quarter section. The southeast quarter was originally owned by Lloyd Turner, the father of James Turner, who sold it to one Hathaway who sold it to William Huggins. The northeast quarter was acquired by William Huggins in about 1949. The home of one of his predecessors in title was situated on the road in question and he and his tenants had no means of ingress and egress except over this road. In other words, it has only been since 1949 that William Huggins has owned on both sides of the road for the last half mile.

It appears to us to be conceded that the road is a public road from where it leaves U. S. 231 just north of Conecuh River until it enters section 25. The contention of William Huggins is that when it reaches that point, which is his property line, it ceases to be a public road and becomes a private road. On the contrary it is the position of James Turner that the road is a public road for its entire length.

 William Huggins first acquired a part of the land in 1928. A considerable number of witnesses testified for the complainant. Their ages vary, some being born as early as 1882 or 1883, but all either had lived or were living in the neighborhood, were familiar with the road and had been familiar with the road for practically all their lives. Some had been required to work the road when such work was compulsory. They testified that the road was a public road, that it had been used as a road by the general public openly, continuously and adversely under claim of right and not by permission of any person, all showing such use to within a short time prior to this suit. The length of such use was in accordance with the age and memory of the particular witness. Some showed such use to have been for more than sixty years prior to this suit and others for more than twenty years prior to 1928.

Like the trial court we are impressed with this testimony. Assuming its truth the result is to put the burden upon the owner of the land to show that the use was permissive or that it was not adverse. West v. West, 252 Ala. 296, 40 So.2d 873; Scruggs v. Beason, 246 Ala. 405, 20 So.2d 774; Locklin v. Tucker, 208 Ala. 155, 93 So. 896.

 There were some witnesses who undertook to show that the road was a private road and the respondent strongly relies on the installation of gates and stock gaps when he purchased a part of the land in 1928. Pictures are before us which show these installations. They are located at the points where the road enters and leaves the land of the respondent. The gates do not extend across the roadway and do not appear to have been locked. It is evident that by placing the stock gaps beside the gates, there was no interruption of the use by foot or automotive vehicles. The gates can be opened to permit of horse drawn traffic. In fact the stock gaps and gates indicate an intent not to interfere with public travel but only to restrict the movement of livestock. But be that as it may, the installations were not made until 1928, when the rights of the public had accrued by prescription. Ritter v. Hewitt, 236 Ala. 205, 181 So. 289; authorities, supra. Besides tendencies of the evidence show that the original stock gaps which William Huggins placed there no longer exist, but have been replaced and repaired by the county, which admits of an inference of a public interest.

 There are conflicts in the evidence, but the witnesses testified orally before the court. We cannot say that the finding of the court is palpably wrong. So under the rule stated by this court many times, we will not disturb the decree. Keener v. Brice, 253 Ala. 95, 43 So.2d 8.

Affirmed.

LIVINGSTON, C. J., and BROWN and LAWSON, JJ., concur.