TAYLOR et al., Appellants
v.
PENNINGTON CO. et al., Respondents

(204 N.W.2d 395)

(File No. 10953. Opinion filed February 15, 1973)

Joseph M. Butler, Bangs, McCullen, Butler, Foye & Simmons, David F. Sieler, Sieler & Sieler, Rapid City, for plaintiffs and appellants.

George Beal, Jack T. Klauck, State's Atty., Rapid City, for defendants and respondents.

WOLLMAN, Justice.

Plaintiffs Robert L. Taylor and Roma L. Taylor (Taylors) and Herman Piebenga and Esther Piebenga (Piebengas) appeal from a judgment in favor of defendants in plaintiffs' action seeking to enjoin defendants from entering upon and constructing a county highway upon plaintiffs' property.

Plaintiffs are the owners of land in Section 34, Township 1 N., R. 7 E., of the Black Hills Meridian, Pennington County, South Dakota. The road in question has at various times been described as the Sammis road or the Sammis trail and will be referred to hereinafter as the road.

On June 1, 1901, a petition bearing the signatures of some 28 freeholders residing in Pennington County, South Dakota was presented to the Pennington County Commissioners, apparently

pursuant to sections 1206-1237 of the Political Code of the 1887 Compiled Laws of Dakota Territory, asking "* * * for the location and establishment of a county road as follows:

'Beginning at a point on the Rapid City and Spring Creek County road (commonly known as the Gramberg Road) near where said road crosses Dry Creek on land owned by Jacob Spahr, in Section 28, Township 1 North, Range 8 East, thence west and south to the Southwest corner of the Southwest Quarter of Southwest Quarter (SW ¼ SE ¼) of said Section 28; thence west on section line between Sections 28 and 33, 29 and 32; thence diagonally across the north half of Section 31 to the Southeast corner of Northeast Quarter (NE ¼) of Section 36, Township 1 North, Range 7 East; thence in a westerly direction across Sections 36 and 35 to intersect the Rapid City and Rockerville road; thence west on the line of said road to where same bears south; thence west and north on the most practicable route to intersect the Rapid City and Sheridan County road.' "

The commissioners appointed three viewers who viewed the proposed county road and submitted a written report to the commissioners stating that they had examined the highway proposed to be located over the following described property:

"Beginning at a point on the Rapid City and Spring Creek County road (commonly known as the Gramberg Road) near where said road crosses Dry Creek on land owned by Jacob Spahr, in Section Twenty-Eight, Township One North, Range Eight East, thence west and south to the Southwest corner of the Southwest Quarter of Southeast Quarter (SW ¼ SE ¼) of said Section 28, thence west on section line between Sections 28 and 33, 29 and 32, thence diagonally across the north half of Section 31 to the Southeast corner of Northeast Quarter (NE ¼) of Section 36, Township 1 North, Range 7 East, thence in a westerly direction across Sections 36 and 35 to intersect the Rapid City and Rockerville Road, thence west on the line of said road to where same bears south, thence west and north

on line of present travel to a point on section line between Sections 28 and 33, near the quarter section corner, thence westerly, keeping as near the section line as possible, to the section corner common to Sections 28, 29, 32 and 33, thence north on section line to intersect the Rapid City and Sheridan County road, * * *".

Pursuant to the report and recommendation of the viewers, dated November 15, 1901, the county commissioners entered the following order:

"It is therefore ordered and determined that the said road be and the same is, hereby laid out and established according to the description aforesaid, and it is hereby declared to be a public highway sixty-six (66) feet wide and the surveyor is hereby ordered to place mounds thereon in accordance with the laws of the State of South Dakota and make a plat thereof."

On July 8, 1902, the county surveyor certified to the county auditor that he had received the foregoing order of the county commissioners on January 17, 1902 and that on April 31, 1902 he had completed said survey in accordance with and as required by said order.

The original copies of the foregoing documents were apparently no longer in existence at the time of trial. The information from the documents had been transcribed, however, in Book A of Road and Bridge Records, together with the field notes of the county surveyor which showed the points and distances of the road as laid out by the viewers.

Although there is an apparent hiatus in documentary and testimonial evidence concerning the use of the road from 1902 until about 1922, the trial court found, and we think that taken as a whole the evidence fairly supports the inference, that the road was in fact laid out, opened and maintained by the county commissioners and was used as a public highway from and after 1902 until the time of trial in 1970.

Defendant Walter C. Taylor, who was 75 years old at the time of trial, testified that he first became familiar with the road

when he moved to Pennington County in 1922 and that he had had occasion to utilize at least parts of the road every year since 1922 by traveling along it on horseback and by automobile. He testified that at no time since 1922 did anyone ever attempt to stop him or to refuse him access to or use of the road.[1] He testified that sometime during the 1930's cattle guards were installed at certain places along the road, this apparently to permit use of the road while the adjacent property was being used for grazing purposes. There was evidence that in 1946 new cattle guards were installed at several locations along the road in order that a highway contractor could use the road to haul gravel from a gravel pit to a construction project in Pennington County. Contrary to plaintiffs' contention that at no time during the history of the road did the county commissioners ever maintain or repair the road, there was testimony that in addition to the installation of the cattle guards there had been some maintenance by way of leveling the road in one or two spots and by placing gravel in a low spot. It should be noted that the road apparently follows the natural terrain in that it was laid out on top of the ridges for most of its length. It appears that the road required very little maintenance and repair because of the manner in which it was laid out and because of the nature of the soil. As Commissioner Taylor testified:

"A I would have to say that I think it is the most excellent road in that regard that I have ever seen laid out. I mean by that that the terrain, the fact that it is on top of the ridge most of the way, the fact it is gravelly, rocky mixed with clay. I've never been stuck on it or anywhere near it. * * *

"A * * * I have traveled it quite frequently during the month of November many, many times. I have been through there when we had quite a lot of snow. I never was around there during years like 1949 or the most severe blizzard years. But I would say it too has very much to offer in that the wind blows that

---

1. There was testimony that on one occasion one of the prior owners of a portion of the property in question had padlocked certain gates across the road in order to keep out hunters.

ridge clear on almost all occasions and all of them
that I ever knew anything about."

Another witness for defendants testified that during the 1949
blizzard he was able to cross the road:

"And when I got on the Samis Trail, got through
across, it was blowed clear. It's laid out in such a
manner that the snow will blow out of the draws and I
could ride right along. And I made very good time."

Other witnesses testified that they had personally had
occasion to use or travel the road during periods of time
extending from 1922 until the time of trial. The testimony
revealed that most of the use of the road was made by
neighboring ranchers living in the area who would trail their
cattle over the road at the beginning and end of the grazing
seasons. Mrs. Daughenbaugh, the county auditor, testified that
for many years her father had sold milk to the CCC camps and
that when he could not traverse the stratosphere bowl road he
always relied on the Sammis road to get over to Highway 16. The
owner of a guest ranch located near the western end of the road
testified that he had started using the road in connection with his
guest ranch in 1958 and that his guests had on occasion driven
over the road at night.

Because of the increased development on property near the
road the county commissioners received numerous requests to
improve the road to make it more suitable for automobile traffic.
The attempt by the county highway department in the spring of
1970 to grade up the 66 foot right-of-way along the road
precipitated this action on the part of plaintiffs to enjoin the
defendants from doing so.

Plaintiffs Robert and Roma Taylor acquired ownership of
property affected by the road in 1954. The property had been
owned by Mrs. Taylor's grandfather, Frank Blair, who was one
of the signers of the petition described above. Robert Taylor
admitted that ever since he had been in possession of the property
there had been a trail across Section 34 made by people
traversing the road, although he denied that he had any notice of

any kind that this was claimed as a county road. Plaintiff Herman Piebenga admitted that at the time he purchased the property affected by the road there was a dirt road or trail leading through the property. Two aerial maps, one made in 1954 and the other in 1962, show the road traversing plaintiffs' property. County highway maps dating back to 1950 indicate the route of the road as an unimproved roadway.

■ We think that the evidence taken as a whole supports the trial court's finding that the road was in fact used by members of the public as a public highway with no interference by plaintiffs or their predecessors in interest, other than the attempt by a prior owner to keep out hunters.

Plaintiffs contend that the procedure followed in 1901 and 1902 to establish the road was not sufficient under the laws then applicable in that there was no adequate description of the property involved. At the time the road was established in 1901, Section 1208 of the 1887 Compiled Laws required the road viewers to give in the report of their proceedings "* * * a full description of such location, change or vacation by metes and bounds and by its course and distance * * *".

■ In the description of the road in the report of the viewers no specific reference is made to Section 34 of Township 1 North, Range 7 East. However, the phrase, "* * * thence west on the line of said road to where same bears south, thence west and north on line of present travel to a point on section line between Sections 28 and 33, near the quarter section corner, thence westerly, * * *", when read in context with a map of the overall route of the road supports the trial court's finding that there was in existence a roadway across section 34 at the time the road was laid out by the viewers, that the description in the original proceedings was sufficient to enable the surveyor to locate the highway and that the beginning and terminus of the portion of the road in question were sufficiently set forth in the description of the viewers. The trial court was correct in concluding that the description of the road was sufficient to withstand the collateral attack brought by plaintiffs some 69 years after the establishment of the road. In the case of Yankton County v. Klemisch, 11 S.D. 170, 76 N.W. 312, a collateral attack was made upon proceedings

instituted by the board of commissioners of Yankton County to establish a county highway under the same statutes involved in this case. This court stated that:

> " 'Ruled by the elementary proposition that the quasi judicial action of a board having by force of statute and proper procedure acquired jurisdiction of the person and subject matter is not subject to collateral attack, we will proceed to examine certain irregularities which counsel for appellant at this late day deem fatal to the proceedings to locate the road in question. Under statutes like ours, giving interested landowners timely notice and ample opportunity to be heard both before the board and on appeal, jurisdiction to act is the only proper subject of inquiry, when, as in this instance, a collateral attack is made upon the proceedings establishing a highway which the public has enjoyed for many years.' " 76 N.W. 312, 313.

In that case the contention was made that the phrase " 'thence northerly on or near the township line to the neighborhood of the quarter section corner' " rendered the petition insufficient to confer any jurisdiction upon the board of county commissioners. In dealing with this objection, this court stated that:

> "While, technically speaking, the description of the proposed road contained in the notice and petition may be in some particulars objectionable, the defects and omissions are not such as render the proceedings absolutely void." 76 N.W. 312, 314.

It should be noted that the report of the viewers in the Klemisch case agreed in substance with the description contained in the petition.

See also the case of Kleppe v. Odin Township, 40 N.D. 595, 169 N.W. 313 in which the North Dakota Supreme Court upheld the validity of the proceedings of establishing a road pursuant to the same provisions of the 1887 Compiled Laws in the face of a challenge to the description of the proposed road on grounds similar to those in the instant case and in the Klemisch case.

It would seem logical that if the viewers and the surveyor were able to lay out the road in 1901 and 1902 without any objection on the part of the affected landowners, it would be a highly technical interpretation of the then existing statutes to hold that the legal description of the proposed road should be subject to collateral attack some 69 years later.

■ Plaintiffs argue that the road ceased to be a public road in that it was never adequately opened as required by Section 1225 of the 1887 Compiled Laws. We think that the trial court's finding that this provision of the law was met is supported by the evidence. True, no witnesses were called who could testify as to personal knowledge of the use of the road during the period immediately subsequent to 1901, but the evidence supports the inference that the road was used from the time it was laid out until the time the present action was brought in 1970.

■ Plaintiffs contend that the 1901 proceedings were insufficient to establish the road because there was no evidence that the county maintained and repaired the road as required by Section 1209 of 1887 Compiled Laws. Here again, we believe that the evidence supports the trial court's finding that the county did in fact perform maintenance on the road at times. This finding is buttressed by the testimony of defendant's witnesses to the effect that the nature of the terrain and the natural characteristics of the underlying soil made maintenance, including snow removal, virtually unnecessary for the purposes for which the road was used until recent years.

In summary, then, the trial court was correct in ruling that the then existing statutes had been sufficiently complied with to withstand attack by plaintiffs in this action.

Plaintiffs contend that the county is barred from claiming the road as a county highway by reason of the application of the South Dakota marketable title act, SDCL 43-30. SDCL 43-30-1 provides that:

> "Any person having the legal capacity to own land in this state, who has an unbroken chain of title to any

interest in land by himself and his immediate or re-
mote grantors for a period of twenty-two years or
longer, and is in possession of such land, shall be
deemed to have a marketable record title to such
interest, subject only to such claims thereto and defects
of title as are not extinguished or barred by the applica-
tion of the provisions of this chapter, instruments which
have been recorded less than twenty-two years, and any
encumbrances of record not barred by the statute of
limitations."

SDCL 43-30-3 provides that:

"Such marketable title shall be held by such person
and shall be taken by his successors in interest free and
clear of all interest, claims and charges whatever, the
existence of which depends in whole or in part upon any
act, transaction, event or omission that occurred twenty-
two years or more prior thereto, whether such claim or
charge be evidenced by a recorded instrument or other-
wise, and all such interest, claims and charges affecting
such interest in real property shall be barred and not
enforceable at law or equity, unless any person making
such claim or asserting such interest or charge shall, on
or before twenty-three years from the date of recording
of deed of conveyance under which title is claimed, or
on or before July 1, 1958, whichever event is the latest
in point of time, file for record a notice in writing, duly
verified by oath, setting forth the nature of his claim,
interest or charge; and no disability nor lack of know-
ledge of any kind on the part of anyone shall operate to
extend his time for filing such claim after the expiration
of twenty-three years from the recording of such deed of
conveyance or one year after July 1, 1957, whichever
event is the latest in point of time."

SDCL 43-30-11 provides that:

"The claims hereby barred shall mean any and all
interests of any nature whatever, however denominated,

whether such claims are asserted by a person sui juris or under disability, whether such person is, or has been within or without the state, and whether such person is natural or corporate or private or governmental."

 Plaintiffs contend that under the provisions of SDCL 43-30-3 and 43-30-11 Pennington County was required to file a claim of its asserted interest in the road within the statutory period. Assuming for the purpose of plaintiffs' argument that the claims of a county are subject to the provisions of the marketable title act, we affirm the trial court's holding that at all times since the original proceedings to lay out and establish the road in 1901 and 1902 the possession of the right-of-way has been in the county, with the result that the county's claim of the road as a public highway is not barred by SDCL 43-30.

South Dakota's marketable title act differs from the acts of other states in certain respects. For example, the Michigan marketable title act states that, "* * * no one shall be deemed to have such a marketable record title by reason of the terms of this act, if the land in which such interest exists is in the hostile possession of another." Mich.Stats.Ann., § 26.1271; M.C.L.A. § 565.101. Also, the Michigan statute provides that "[t]his act shall not be applied * * * to bar or extinguish any easement or interest in the nature of an easement, the existence of which is clearly observable by physical evidences of its use * * *". Mich.Stats.Ann., § 26.1274, M.C.L.A. § 565.104.

The Minnesota marketable title act provides that, "This section shall not * * * bar the rights of any person, partnership or corporation in possession of real estate. * * *". Minn.Stats.Ann. § 541.023 subd. 6. In the case of B. W. & Leo Harris Co. v. City of Hastings, 240 Minn. 44, 59 N.W.2d 813, the Minnesota Supreme Court was faced with the question concerning the nature of the possession required by this particular section of the marketable title act. The court stated that:

"In our opinion it must be present, actual, open, and exclusive and must be inconsistent with the title of the person who is protected by this section. It cannot be equivocal or ambiguous but must be of a character

which would put a prudent person on inquiry * * *". 59
N.W.2d 813, 816.[2]

This holding was followed in Wichelman v. Messner, 250 Minn.
88, 83 N.W.2d 800.

We quote the following analysis of the comparison between
the South Dakota act and the Minnesota act from the trial court's
memorandum decision in the instant case:

> "Although the South Dakota statute does not
> contain an express exception with respect to persons in
> possession of real estate, one of the prerequisites for in-
> voking the bar of the act is that the person doing so
> must be 'in possession' of such land. If, as stated in the
> *Wichelman* [v. Messner, supra] case, right-of-way ease-
> ments which are manifested by actual use or occupancy
> come within the exception provided in the Minnesota
> statute, then they are exempted under the South Dakota
> statute because the person claiming the benefit of the
> act cannot claim to be in possession of the right-of-way
> easement. In other words, the 'possession' of the right-
> of-way easement is in the dominant estate and not in
> the servient estate. Or, in the context of this case, it
> could be stated that the right-of-way easement involved
> is in the possession of the public as opposed to the
> owners of the land which it traverses. Following this
> reasoning, neither Taylor nor Piebenga can claim that
> they are 'in possession' of the right-of-way easement in
> question."

We conclude that the trial court's analysis of the South
Dakota marketable title act is correct and that the court's finding
that the plaintiffs were not in possession of the right-of-way
easement is adequately supported by the evidence. We have

---

2. As a footnote to this statement, the court stated that, "This is the same
type of possession which constitutes constructive notice under the real
estate recording act * * *". 59 N.W.2d 813, 817. For the type of pos-
session that will constitute constructive notice in South Dakota, see Phillis
v. Gross, 32 S.D. 438, 143 N.W. 373.

considered plaintiffs' argument that the maintenance of gates along the line of the road was totally inconsistent with the existence of a public highway, Bino v. City of Hurley, 14 Wis.2d 101, 109 N.W.2d 544, and that the use by the public of the road was not sufficient to relieve the county from the necessity of filing a claim under the marketable title act, Caroga Realty Co. v. Tapper, 274 Minn. 164, 143 N.W.2d 215. The trial court did not err in finding that the use of the road was commensurate with the needs of the public during all times in question and that the existence of gates and fences along the road was not inconsistent with the existence of a public right-of-way in view of the general custom and usage of the locality.

Plaintiffs cite Lacey v. Judge, 68 S.D. 394, 3 N.W.2d 115, for the proposition that the possession and usage required to avoid the application of the marketable title act should be at least equivalent to the possession and usage required to establish an implied dedication of a highway. We are not persuaded that the Lacey case is applicable here. That case involved only the question of implied dedication of private property to a public use, there having been no statutory proceedings to lay out and establish a road as in the instant case.

In conclusion, then, we hold that the trial court was correct in ruling that the statutory proceedings followed in 1901 and 1902 to lay out the road in question were not subject to collateral attack at this late date and that the county's claim of a public highway right-of-way over plaintiffs' land was not barred by the South Dakota marketable title act. We have considered the other arguments and claims of alleged error raised by plaintiffs and conclude that they do not warrant reversal of the judgment.

Affirmed.

BIEGELMEIER, HANSON and WINANS, JJ., concur.

MILLER, Circuit Judge, concurring in part, dissenting in part.

MILLER, Circuit Judge, sitting for DOYLE J., disqualified.

MILLER, Circuit Judge (concurring in part, dissenting in part).

I do not agree with all of the majority opinion; however, I do agree that the trial court's findings, except as to the following matter, are "not clearly erroneous", and therefore I would concur in the result.

I am of the opinion that the majority opinion neglected to make a determination on an important issue in the case, that being the validity of the highway right-of-way in those places where it deviated from the original course. The trial court held (and the majority opinion upheld) that the defendant county, rather than plaintiffs, was in possession of a right-of-way easement across the property and that therefore its claim of a public highway was not barred by the South Dakota marketable title act. All of this was based upon the 1901 proceedings and the usage and maintenance thereafter. Not mentioned in the opinion was the fact that the testimony revealed that there were places along the road where there were deviations of 25 feet to 40 to 50 feet from the original course. I would not hold that the county had possession of said places of deviation in this action. Further, SDCL 31-3-2 prevents the establishment of a public highway by "mere use". An examination of the cases interpreting said statute would seem to indicate that it was specifically intended to prevent the "angling across" which occurred here. See Roche Realty & Investment Co. v. Highlands Co., 1912, 29 S.D. 169, 135 N.W. 684; Stannus v. Heiserman, 1949, 72 S.D. 567, 38 N.W.2d 130; Edmunds v. Plianos, 1952, 74 S.D. 260, 51 N.W.2d 701; and Lacey v. Judge, 1942, 68 S.D. 394, 3 N.W.2d 115. I am of the opinion that the county should be required to rely upon implied dedication (or condemnation) to acquire a valid public road in places where it varies from the course as laid out and opened, or at the very least be required to follow the original course of the road.