2012 ND 20

**McKENZIE COUNTY, a North Dakota Municipality, Plaintiff and Appellee,**

v.

**Deborah REICHMAN a/k/a Deborah Stonecipher, Defendant and Appellant.**

**No. 20110037.**

Supreme Court of North Dakota.

Jan. 24, 2012.

Harry Malcolm Pippin (argued), Williston, N.D., and Adam Daniel Wogsland (on brief), Fargo, N.D., for plaintiff and appellee.

Monte Lane Rogneby, Bismarck, N.D., for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Deborah Reichman appealed from a judgment granting McKenzie County a prescriptive easement for a road that crosses her land and ranch headquarters in McKenzie County and dismissing her counterclaim for inverse condemnation. We conclude the district court did not clearly err in finding an adverse public use of the road for the prescriptive period. We affirm the court's formal declaration for a prescriptive road, but we remand for the court to provide a description for the road.

I

[¶ 2] In 2006, McKenzie County sued Reichman, alleging a road that crosses her land and ranch headquarters in McKenzie County had been used by the public in an open, general, continuous, and uninterrupted manner for at least 20 successive years and seeking a prescriptive easement and formal declaration as a public road under N.D.C.C. § 24–07–01. The road, which the parties call "Flat Rock Road" or "Flat Top Rock Road," generally runs southeast from State Highway 16 before it enters Reichman's ranch's north boundary and passes through her land and ranch headquarters in a southern direction. According to Reichman, the public's use of the road through her ranch significantly increased after she purchased the ranch in 2000, including an increase in traffic attributable to the oil industry, and she sought to restrict public use of the road. The district court granted McKenzie County's ex parte motion for a temporary restraining order to restrict Reichman from interfering with public use of the road while the action was pending. After a hearing on

the temporary restraining order, the court allowed Reichman to continue to use the road as needed for her livestock operation and permitted the County to maintain the road.

[¶ 3] Reichman thereafter answered, denying the road was a public road and claiming that after she purchased the ranch in 2000, she continuously exercised ownership rights and control over the road, including placing gates or cattle guards across the road as part of her livestock operation. She claimed any public use of the road was permissive, and there had been no continuous, adverse, hostile, and uninterrupted use of the road for the prescriptive 20–year period. She counterclaimed for damages for inverse condemnation, and she also sought damages for responding to McKenzie County's alleged improper conduct in bringing an ex parte motion for a temporary restraining order.

[¶ 4] At trial, McKenzie County presented evidence from prior owners of Reichman's ranch and from residents from the surrounding area and County employees. According to Robert Olson, a neighbor who lived with his parents about two miles south of the ranch from 1920 until 1952 when he moved to a location about one mile north of the ranch, there had been an unimproved one-vehicle trail through the ranch, and in the early 1950s, he and other residents in the area, including Reichman's predecessor in interest, Emmet Krueger, asked McKenzie County to construct a road on the trail to facilitate travel. Olson testified McKenzie County constructed a graded road on the trail about two months later with the knowledge and consent of the adjacent landowners, including Krueger, and the County provided maintenance for the road, including grading, plowing snow, placing scoria on the road, and installing culverts and bridges. Olson testified he traveled the road several times a week and the road was only blocked for short periods when ranchers moved livestock. According to Olson, there were some gates on the road going north from the ranch to County Road 16, but those gates were replaced with car passes, which other witnesses referred to as cattle guards and one witness testified were the same thing as cattle guards, within a year after McKenzie County constructed the road. Olson testified any use of gates across the road was to control livestock and not to prevent the public's free use of the road.

[¶ 5] Vernon and Fern Goldsberry purchased the ranch in 1967, and Vernon Goldsberry redesigned the ranch into its current configuration in 1974 to include a series of corrals and stud runs on the ranch headquarters, with the Flat Top Rock Road separating the corrals, stud runs, and pastures. According to Reichman, she and previous ranch owners used the road and gate panels across the road to funnel livestock into the centrally located corrals at the ranch headquarters. According to Fern Goldsberry and Robert Olson, the gate panels were used to move livestock, were not locked, and were placed across the road for a half hour to an hour two to three times per year. After Vernon Goldsberry died, Dennis Yochim purchased the ranch from Fern Goldsberry in 1981, and he reconveyed the ranch to her in 1984, but he stayed on the ranch under a management contract with her until she sold the ranch to Ed Priddy in 1995. According to Yochim, he used temporary gates and corral panels across the road to move livestock between corrals and pastures, but he did not prevent the public from using the road, and he observed the general public using the road on a daily basis. Priddy owned the ranch from 1995 until 2000, and he testified he placed gates on the road two or three times a year for

about twenty minutes to move livestock, but he reopened the gates when he was finished. Priddy sold the ranch to Reichman in December 2000.

[¶ 6] According to Reichman, she consistently used the road and panels and gates across the road in her livestock operation after she purchased the ranch from Priddy. She testified the road within her ranch boundary was narrower and was not maintained to the same extent as the road outside her ranch boundary. Reichman presented evidence there were some permanent gates across the road in several locations until car passes were placed on the road, and prior landowners in the area consistently placed gates on the road as necessary for their cattle operations. According to Reichman, the road is an integral part of her ranch operation, Priddy had told her the road was part of the ranch, and the road physically changes at cattle guards at the north and south boundaries of her ranch. She also testified McKenzie County significantly altered the road after she purchased the ranch in 2000.

[¶ 7] Several McKenzie County employees testified about the extent of County maintenance for the road, including grading and blading the road, placing scoria on it, plowing snow, fixing drainage, replacing narrow car passes with wider car passes, cleaning out existing car passes, spraying cattle guards, and mowing the road. McKenzie County also presented evidence that the trail or road existed on a 1901 survey map, a 1936 and a 1942 map of McKenzie County, a 1942 soil survey map, a 1966 Midland Atlas, and a bridge inventory map published by the State.

[¶ 8] After trial, the district court granted McKenzie County a prescriptive easement and declared Flat Top Rock Road to be a public road as it presently existed. The court found McKenzie Coun-

ty constructed the road at its expense in the 1950s, when, at the request of the public, it converted a known trail to a constructed, scoria road that continued to be maintained by McKenzie County as a public roadway at its expense, including placing culverts, installing car passes and cattle crossings, grading and spreading scoria, and plowing snow. The court found the construction and location of the road was with the knowledge of the adjacent landowners, including the prior owner of Reichman's land. The court said the 20–year period for calculating a prescriptive use began when the road was constructed by McKenzie County, if not before. The court also found adjacent landowners and the prior owners of Reichman's ranch used temporary fencing to assist their ranching operations, which did not restrict the free flow of traffic on the road other than a few times per year for short periods. The court said the prior landowners' use of the road did not reserve the landowners' right to restrict public usage and found McKenzie County had proven by clear and convincing evidence that a prescriptive easement existed for the road and the County's use was adverse to the interest of Reichman and her predecessors in interest. The court thereafter dismissed Reichman's counterclaim for damages for inverse condemnation and for damages for McKenzie County's claimed improper conduct in bringing an ex parte motion for a temporary restraining order.

II

[¶ 9] Reichman argues the district court erred in granting McKenzie County a prescriptive easement for the road because the court failed to correctly calculate the 20–year period for a prescriptive easement backward from when McKenzie County began the lawsuit in 2006. She argues the County did not clearly and

convincingly establish adverse use during that period, because the adjacent landowners, including her predecessors in interest, blocked the road for their ranching operations and any public use of the road was not continuous and uninterrupted. She contends she had no notice the County was claiming a legal interest in the road. She asserts the County failed to make a timely claim for the road and its claim should be barred by laches, or by N.D.C.C. § 28–01–04, which precludes actions "for the recovery of real property or for the possession thereof" unless the plaintiff "was. seized or possessed of the premises in question within twenty years before the commencement of such action."

[¶ 10] Section 24–07–01, N.D.C.C., "embodie[s]" the common law rule for establishing a road by prescription in North Dakota, *see Berger v. Berger*, 88 N.W.2d 98, 100 (N.D.1958), and provides:

All public roads and highways .within this state which have been or which shall be open and in use as such, during twenty successive years, hereby are declared to be public roads or highways and confirmed and established as such whether the same have been laid out, established, and opened lawfully or not.

■ [¶ 11] A party claiming a road by prescription under N.D.C.C. § 24–07–01, must establish by clear and convincing evidence the general, continuous, uninterrupted and adverse use of the road by the public under a claim of right for 20 years. *Home of Economy v. Burlington N. Santa Fe R.R.*, 2007 ND 127, ¶ 14, 736 N.W.2d 780; *Fischer v. Berger*, 2006 ND 48, ¶ 7, 710 N.W.2d 886; *Hartlieb v. Sawyer Twp. Bd.*, 366 N.W.2d 486, 488 (N.D.1985); *Mohr v. Tescher*, 313 N.W.2d 737, 739 (N.D.1981); *Backhaus v. Renschler*, 304 N.W.2d 87, 89 (N.D.1981); *Berger*, 88 N.W.2d at 100.

[¶ 12] In *Berger*, 88 N.W.2d at 100–03 (citations omitted), this Court, in the context of a de novo review of a trial court decision granting a prescriptive easement for a road, discussed the kind of adverse use necessary to establish a public road by prescription:

Mere user of land by the public as a highway is insufficient of itself to establish a highway by prescription or long use. The user must be adverse and hostile to the rights of the owners; and mere travel by the public does not of itself constitute adverse use of the property by the public. Regardless of how long it is continued, a user by license or permission of the owner of the land sought to be impressed with the public easement of travel is not adverse and affords no basis for prescription....

Permissive use has reference to the conduct of the landowner in acquiescing and consenting that the road be traveled by the public while adverse user imports an assertion of right on the part of those traveling the road, hostile to that of the owner. The hostile use of a road over privately owned land necessary to establish a prescriptive· right means a use inconsistent with the owner's right to exclusive use. It does not imply enmity or ill will and is consistent with friendly relations between user of the road and landowner....

It must be conceded that placing obstructions across a road, such as a gate, is a strong indication that the use by others is permissive only, and that erection of a gate or gates across the road tends to evidence an intention on the part of the owner to assume and assert ownership and possession of the land over which the road runs....

To establish a public way by prescription it is necessary for the plaintiff to prove an adverse use of the land which

had continued for more than 20 years under a claim of right and with the acquiescence of the defendants or their predecessor in title. The mere fact of the user by the public for the period required to establish a public way, raises no presumption that such use is adverse. To establish such a use a further fact must be proved, or admitted, that the general public used the way as a public right; and that it did, must be proved by facts which distinguish the use relied on from rightful use by those who have permissive right to travel over the private way....

"If all the evidence which was introduced was equally consistent with the view that the uses relied on were of the latter character, (permissive use), the plaintiff failed to sustain the burden of proof resting upon him to show a use under a claim of right."

### A

■ ■ [¶ 13] We initially consider Reichman's claim that the district court failed to correctly calculate the 20–year period for a prescriptive easement backward from when McKenzie County began the lawsuit in 2006. This Court has recognized the 20–year period for measuring a prescriptive easement begins when the burden is placed on the land and relates back to the inception of the adverse use. *See Nagel v. Emmons Cnty. Water Res. District*, 474 N.W.2d 46, 49–50 (N.D.1991); *Conlin v. Metzger*, 77 N.D. 620, 625, 44 N.W.2d 617, 620 (1950); *Kritzberger v. Traill Cnty.*, 62 N.D. 208, 212–13, 242 N.W. 913, 915 (1932).

[¶ 14] In *Nagel*, 474 N.W.2d at 47–50, we discussed the calculation of the appropriate period for a prescriptive flowage easement and the effect of a prescriptive use on a landowner's action against Emmons County for injunctive relief and damages. There, the landowner sued Emmons County in 1989, claiming the County's road improvements between 1963 and 1965 caused the landowner's property to be flooded. *Id.* at 47. The landowner claimed excess water had caused damage to his property since 1965, but the first substantial damage occurred in 1984, and he sought an injunction against the County and damages for flooding since 1986. *Id.* The trial court ruled the landowner's action was barred because the County had acquired a flowage easement by prescription. *Id.* This Court affirmed the dismissal of the landowner's action, concluding the required period of adverse use to acquire an easement by prescription was 20 years, which began to run when the burden was placed on the land with the completion of the road improvements in 1965 and related back to the inception of the adverse use. *Id.* at 49–50. We said any consideration of the varying amounts of flowage resulting from the 1965 improvements went to the extent of the prescriptive right and not to its acquisition. *Id.* at 50. We concluded the effect of the County's adverse use of the property for the prescriptive period was that the County could not be liable for the use of the property during that period. *Id.*

■ [¶ 15] Under earlier versions of N.D.C.C. § 24–07–01, this Court said the 20–year period began when the public use began. *Kritzberger*, 62 N.D. at 212–13, 242 N.W. at 915; *Burleigh Cnty. v. Rhud*, 23 N.D. 362, 366–68, 136 N.W. 1082, 1083–84 (1912). In *Kritzberger*, 62 N.D. at 213, 242 N.W. at 915, this Court said "[a] public highway need not be opened by officials. The people may open the road themselves by use, 'by taking possession and using it.'" This Court's subsequent cases applying N.D.C.C. § 24–07–01 have implicitly recognized the 20–year period for a prescriptive road begins when the adverse public use begins. *See Home of Economy,*

2007 ND 127, ¶¶ 2, 16, 736 N.W.2d 780 (discussing public use of land dating back to 1920s and remanding for factual determination about adverse public use); *Fischer*, 2006 ND 48, ¶¶ 2, 9–10, 710 N.W.2d 886 (discussing use dating back to 1947 and affirming trial court finding of no adverse use); *Fears v. Y.J. Land Corp.*, 539 N.W.2d 306, 308–09 (N.D.1995) (holding 1980 tax deed for plaintiffs' adjoining land did not extinguish any claimed and unadjudicated prescriptive easement across defendant's land and remanding for determination of whether public road existed across defendant's land); *Mohr*, 313 N.W.2d at 739–40 (discussing public use of roads dating back to 1920s and affirming trial court finding of no adverse use); *Backhaus*, 304 N.W.2d at 89–90 (discussing public use dating back to 1920s and affirming trial court finding of no adverse use). The import of our prescriptive easement jurisprudence under N.D.C.C. § 24–07–01 is that the prescriptive period runs from the time when the burden is placed on the land with the inception of an adverse public use.

[¶ 16] Reichman's reliance on N.D.C.C. § 28–01–04 and *James v. Griffin*, 2001 ND 90, 626 N.W.2d 704, is misplaced. In *James*, at ¶¶ 1–5, 10–15, this Court reviewed a quiet title action involving a boundary dispute between adjoining landowners under the doctrine of acquiescence, in which the title of the person claiming acquiescent possession was interrupted by a two-month period of nonacquiescent possession by a third party. The interruption occurred less than 20 years before the quiet title action was begun, and there was evidence the party claiming acquiescent possession may have satisfied the requirements for acquiescence before the two-month interruption began. *Id.* at ¶¶ 2–4.

[¶ 17] In *James*, 2001 ND 90, ¶ 12, 626 N.W.2d 704, a majority of this Court said

the 20–year period for establishing acquiescence derived from the statutory period for acquiring title by adverse possession under N.D.C.C. § 28–01–04, which provides:

> No action for the recovery of real property or for the possession thereof may be maintained, unless the plaintiff, or the plaintiff's ancestor, predecessor, or grantor, was seized or possessed of the premises in question within twenty years before the commencement of such action.

The majority said under the plain language of that statute, the 20–year period was measured back from the commencement of the action. *James*, at ¶ 12. The majority held the party claiming acquiescence had not shown acquiescent possession of the land for 20 years before commencement of the action, and the trial court did not err in dismissing that party's action and quieting title in the disputed land in the adjoining landowner. *Id.* at ¶ 15. A dissent concluded the 20–year period for establishing acquiescence need not be the 20 years immediately before commencement of the action and would have remanded to determine whether 20 years of acquiescence had occurred before the interruption by the third party's nonacquiescent possession. *Id.* at ¶¶ 18, 23 (Neumann, J., dissenting).

[¶ 18] *James* involved an action for the possession of real property under principles of adverse possession and acquiescence. In *Home of Economy*, 2007 ND 127, ¶ 11, 736 N.W.2d 780, we described the difference between adverse possession and prescription, stating adverse possession involves the acquisition of a present possessory estate while prescription concerns itself wholly with the acquisition of rights in the land of another, such as by an easement. McKenzie County's action seeks a formal judicial declaration of a

claimed prescriptive easement for a public road under the specific language of N.D.C.C. § 24–07–01, which requires the road to be "open and in use as such ... [for] twenty successive years ... whether the same [has] been laid out, established, and opened lawfully or not." In construing statutes, the specific controls the general. N.D.C.C. § 1–02–07; *Leno v. K & L Homes, Inc.*, 2011 ND 171, ¶ 12, 803 N.W.2d 543.

■ [¶ 19] The plain and specific language of N.D.C.C. § 24–07–01 makes a road a public road if it has been open and used as a public road for 20 successive years regardless of whether the road has been laid out, established, or opened lawfully. *See Home of Economy*, 2007 ND 127, ¶ 12, 736 N.W.2d 780 (discussing plain language of N.D.C.C. § 24–07–01 and recognizing public road may be opened by public's use of road); *Kritzberger*, 62 N.D. at 213, 242 N.W. at 915 (stating public may open road by taking possession and using it). Although some of this Court's decisions for prescriptive easements have cited N.D.C.C. § 28–01–04 when discussing the 20–year period for prescription, those discussions generally involve the amount of time necessary for prescription rather than the time for beginning the prescriptive period. *See Nagel*, 474 N.W.2d at 49. McKenzie County's action is for the establishment of a prescriptive easement for a public road under the specific language of N.D.C.C. § 24–07–01 and is not an action for the "recovery of real property or for the possession thereof" under N.D.C.C. § 28–01–04.

[¶ 20] We conclude the district court did not err in applying N.D.C.C. § 24–07–01 and deciding the prescriptive period commenced when McKenzie County constructed the road, which the court found was in the early 1950s.

**B**

■ [¶ 21] Reichman argues there is no evidence in the record that for any 20–year period, the County's use of the road was adverse to her, or to her predecessors' claim to the road. She argues the undisputed evidence establishes permanent gates impeded traffic on the road through the ranch at least until 1970. She also argues all the prior owners of her ranch exercised control over the road during any applicable 20–year period by periodically placing gates on the road as needed to move livestock, which precluded McKenzie County from establishing an adverse claim to the road. She argues the fact the landowners' use may have been occasional is irrelevant, because the landowners' use is completely inconsistent with the County's claim of an adverse use of the road. She claims the landowners permitted the public to use the road and permitted the County to maintain the road as long as those uses were not adverse to the landowners' use of the road.

■ [¶ 22] Adverse use is a question of fact, subject to the clearly erroneous standard of review under N.D.R.Civ.P. 52(a). *Fischer*, 2006 ND 48, ¶ 8, 710 N.W.2d 886; *Hartlieb*, 366 N.W.2d at 488; *Mohr*, 313 N.W.2d at 739; *Backhaus*, 304 N.W.2d at 90. "A finding of fact is clearly erroneous if there is no evidence to support it, if, on the entire record, a reviewing court is left with a definite and firm conviction a mistake has been made, or if the finding was induced by an erroneous application of the law." *Fischer*, at ¶ 8. "A choice between two permissible views of the weight of the evidence is not clearly erroneous." *Id.* "On appeal, this Court does not reweigh conflicts in the evidence, and we give due regard to the district court's opportunity to judge the credibility of the witnesses." *Id.*

[¶ 23] There is evidence in the record that McKenzie County converted the trail to a constructed scoria road in the early 1950s at the request of users of the trail and with the knowledge of the adjacent landowners, including the prior owner of Reichman's land, Emmet Krueger. Although Reichman claims there was some road maintenance by private entities, there is also evidence that McKenzie County constructed and provided maintenance on the road, including placing culverts and car passes on the road, grading and spreading scoria, and plowing snow.

[¶ 24] This Court has suggested the expenditure of public funds for maintenance of a road provides an indication the road is a public road. *See Berger v. Morton Cnty.*, 57 N.D. 305, 306–09, 221 N.W. 270, 271–72 (1928). Other courts have held that the expenditure of public funds for construction and maintenance of a road is evidence of an adverse use. *Weidner v. State*, 860 P.2d 1205, 1210–11 (Alaska 1993); *McIntyre v. Board of Cnty. Comm'rs*, 86 P.3d 402, 413–14 (Colo.2004); *City of Des Plaines v. Redella*, 365 Ill. App.3d 68, 301 Ill.Dec. 722, 847 N.E.2d 732, 739 (2006); *Kratina v. Board of Comm'rs*, 219 Kan. 499, 548 P.2d 1232, 1237 (1976); *Smith v. Russell*, 2003 MT 326, ¶¶ 14–17, 318 Mont. 336, 80 P.3d 431; *Boykin v. Carbon Cnty. Bd. of Comm'rs*, 2005 WY 158, ¶ 15, 124 P.3d 677. In *Weidner*, at 1210–11, the Alaska Supreme Court aptly explained the effect of the expenditure of public funds for construction and maintenance of a road:

> The dedication of State resources to the construction and maintenance of a public roadway is not the type of land use which one would subject to the permission of a servient landowner. In constructing a road, the government makes a commitment that contemplates continued, unrestricted use of the affected land. In other words, once the State

determines a roadway is needed for public access to a certain region, the State surely does not intend such access to be contingent upon the permission of a private landowner. . . . Thus, construction and maintenance of a public roadway is a use that contemplates a claim of right rather than the owner's permission. For this reason, we hold that the State's construction and maintenance of Bay Road overcomes any presumption of permissive use.

[¶ 25] Here, the district court found McKenzie County constructed the road and provided maintenance for the road, and we decline to reweigh the effect of that evidence about County construction and maintenance of the road. We conclude those findings support an adverse public use.

[¶ 26] Reichman argues there was undisputed evidence of permanent gates across the road through the ranch at least until the 1970s. However, there is also contrary evidence that any permanent gates were removed shortly after the road was constructed. Robert Olson testified that any permanent gates on the road were replaced with car passes within one year after McKenzie County constructed the road. Fern Goldsberry also testified her husband did not place gates across the road to stop people from using the road. The district court was in the best position to weigh the conflicting evidence, and we do not reweigh any conflicts in the evidence about the existence of permanent gates on the road. *See Fischer*, 2006 ND 48, ¶ 8, 710 N.W.2d 886.

■ [¶ 27] Reichman also argues the use of gates across the road for working livestock establishes a permissive use. We have recognized the use of gates across a road is indicative of a permissive use. *Fischer*, 2006 ND 48, ¶¶ 2–4, 9, 710

N.W.2d 886; *Mohr,* 313 N.W.2d at 739–40; *Backhaus,* 304 N.W.2d at 89; *Berger,* 88 N.W.2d at 100–04. However, in those cases, there was evidence the gates were not temporary impediments; rather, they were intended to prevent the public from freely using the road. *See Fischer,* at ¶¶ 2–10; *Mohr,* at 739–40; *Backhaus,* at 89; *Berger,* at 100–04. *See* N.D.C.C. § 24–12–02(1) ("No person may [o]bstruct any public highway in any manner with intent to prevent the free use thereof by the public."). Other courts have also recognized that the use of gates across a road is indicative of a permissive use, but that gates used only for working livestock which are not intended to deny access or interfere with public traffic do not establish a permissive use of a road. *Huggins v. Turner,* 258 Ala. 7, 60 So.2d 909, 910–11 (1952); *Hoover v. Smith,* 248 Ark. 443, 451 S.W.2d 877, 879 (1970); *Rasmussen v. Fowler,* 245 Mont. 308, 800 P.2d 1053, 1055–56 (1990); *Taylor v. Pennington Cnty.,* 87 S.D. 172, 204 N.W.2d 395, 401–02 (1973). Those cases focus on the actual use of and purpose for the gates. *Huggins,* at 911; *Hoover,* at 879; *Rasmussen,* at 1055–56; *Taylor,* at 401–02. We agree with the rationale of those cases that the effect of permanent or temporary gates on a prescriptive easement for a road must focus on the actual use and purpose of the gates and must be evaluated on a case-by-case basis. *See* N.D.C.C. § 24–12–02(1).

[¶ 28] Here, the district court found:

7. The adjacent owners periodically utilized temporary fencing to assist in their ranching operations subsequent to the construction of the roadway. These fencing operations did not restrict the free flow of public traffic other than a few times per year, and then for limited times. There was no evidence that [McKenzie County] ever objected to those uses by the adjacent landowners. The testimony of all use[r]s and former owners of the land adjacent to the roadway (with the current exception of [Reichman]) was that they all felt that the road was a public road.

8. From 1968 to 2000 all who have owned or occupied the premises which are currently occupied by [Reichman], including Fern Goldsberry, Dennis Yochim, Joe Barbour, and Ed Priddy, testified that:

a. They all believed that the road was a public road and at no time did they ever try to block or impede traffic;

b. That the County maintained the road;

c. That the only time travel on the road was in any way impeded was when corral panels were used across the road a couple times a year for short periods of time, and then only for purposes of briefly containing livestock when moving cattle or horses;

d. That the road was freely used by the traveling public without any objection from anyone, as all concerned treated the road as public in all respects.

[¶ 29] There is evidence in this record to support the district court's findings about the temporary use of the gates and their effect on adverse public use, and we decline Reichman's invitation to substitute our judgment for the district court's findings or to reweigh that evidence. Although the evidence of the extent of adverse use may not be as exact as Reichman would demand, in other contexts, we have recognized that historical evidence regarding land configurations and use may never be proven with the preciseness demanded by a party. *See Peterson v. Sando,* 2011 ND 206, ¶ 20, 806 N.W.2d 172 (involving historical natural elevation

of area). Here, the district court weighed all the conflicting evidence and drew inferences and conclusions from that evidence, and we are not left with a definite and firm conviction the court made a mistake. We conclude the court's findings of a continuous, uninterrupted and adverse public use for the prescriptive period are not clearly erroneous.

## C

[¶ 30] Reichman also argues the district court erred in failing to make findings on the scope and nature of the prescriptive easement. She claims McKenzie County is only entitled to the actual traveled surface of the road along with the reasonably necessary shoulders and slopes. McKenzie County responds the road was declared a public road as it "presently exists."

[¶ 31] The width and location of a road acquired by prescription is a question of fact. *Keidel v. Rask,* 290 N.W.2d 255, 257 (N.D.1980). In *Keidel,* at 258–60, we considered an issue about the width of a prescriptive road easement under N.D.C.C. § 24–07–01. We said the extent of a prescriptive easement is "fixed by the use through which it was created, and no use can be justified under a prescriptive easement unless it can fairly be regarded as within the range of privileges asserted by the adverse user and acquiesced in by the owner of the servient tenement." *Id.* at 258. We explained the "width of a prescriptive public road ... is determined from the extent of actual use of the property for roadway purposes over the prescriptive period," which "includes not only the actual traveled surface area of the roadway, but also any adjacent land which is needed for the prescription to be maintained as a public road, including any land reasonably necessary for ditches, shoul-

ders, and slopes." *Id.* We remanded for appropriate proceedings on that issue. *Keidel,* at 260.

[¶ 32] On appeal after the remand, we again discussed the description and dimensions of the prescriptive road in *Keidel v. Rask,* 304 N.W.2d 402, 408–09 (N.D.1981), and we quoted with approval from *Barfnecht v. Town Bd.,* 304 Minn. 505, 232 N.W.2d 420, 423–24 (1975):

"A dedication resulting from adverse public use arises from the fact that such use serves to give the owner notice that, if he means to dispute the rightfulness of the public use, he must assert his right within a statutory period by physical action or suit. The statute provides a statute of limitations, the running of which estops an owner from denying the existence of a public easement.

"Public use cannot be said to apply to lands not actually used. There is no reason that an owner should know that he is required to dispute the rightfulness of a nonexistent user. A property owner thus receives no notice as to a public claim on any property in excess of that which has actually been used. Thus, a dedication by public use cannot constitutionally exceed the amount of actual dedication. [Citations omitted.]

"As a result, [Minn.Stat.] § 160.05 may operate to dedicate a road by public use only to the extent of actual use over the statutory period. The boundary of a public highway acquired by public use is a question of fact to be determined by the appropriate finder of fact. [Citations omitted.] The width of the prescriptive easement, however, is not limited to that portion of the road actually traveled; it may include the shoulders and ditches that are needed and have actually been used to support and maintain the traveled portion. [Citations omitted.]

"While our decision today will limit the dedication of public roads by adverse public use to the actual extent of such use, it will not prevent governmental bodies from upgrading, widening, or improving public ways. A governmental body may always accomplish such goals by the process of eminent domain. Eminent domain proceedings, however, effectively provide private landowners with notice, due process of law, and the opportunity to secure just and fair compensation in return for the property taken."

[¶ 33] Here, the district court's decision declared the road was a public road as it "presently exists." The court made no other findings on the extent of the use over the prescriptive period and did not provide any type of legal description for the prescriptive road. Under *Keidel*, 304 N.W.2d at 408–09 and *Keidel*, 290 N.W.2d at 258, the width of a prescriptive road must be determined by actual use over the prescriptive period and may include shoulders and ditches needed to support and maintain the traveled portion of the road. We conclude a remand is necessary in this case for appropriate proceedings for the court to provide a description for the prescriptive road either by width, by metes and bounds, or by other suitable description as the road existed at the commencement of the action. Because the district court judge who heard this case has retired and a different district court judge will consider this issue on remand, the new judge must comply with N.D.R.Civ.P. 63.

### III

[¶ 34] Reichman argues the district court erred in dismissing her counterclaim for damages for inverse condemnation.

[¶ 35] In *Nagel*, 474 N.W.2d at 48–50, we considered a landowner's claim for damages for a flowage easement. We held the landowner's claim was barred because the effect of Emmons County's adverse use of the landowner's property for the prescriptive period resulted in the County not being liable for its use during the prescriptive period. *Id.* at 50. We explained that although the County's use of the landowner's property may have created a cause of action during the prescriptive period, the County's subsequent acquisition of the right of use of the property precluded the landowner from maintaining an action for damages. *Id.*

[¶ 36] In *Kritzberger*, 62 N.D. at 210–14, 242 N.W. at 914–16, this Court considered a claim for injunctive relief by a landowner who acquired a tract of land near a prescriptive road in 1920. The primary issue in that case involved the width of the road. 62 N.D. at 213, 242 N.W. at 915. This Court recognized the public acquired a statutorily described 66 foot wide road by prescription in 1891 or 1892, and the public's right to claim the road as a public highway had accrued years before the landowner purchased his land in 1920. 62 N.D. at 214, 242 N.W. at 916. This Court therefore concluded the landowner acquired his land with the burden of the prescriptive road upon the land. *Id.*

[¶ 37] Other courts have also recognized that after the expiration of the prescriptive period, the landowner's right to bring an action is extinguished, effectively vesting property rights in the adverse user. *See Weidner*, 860 P.2d at 1212; *Board of Cnty. Comm'rs v. Flickinger*, 687 P.2d 975, 983–85 (Colo.1984); *Redella*, 301 Ill.Dec. 722, 847 N.E.2d at 737; *Algermissen v. Sutin*, 133 N.M. 50, 61 P.3d 176, 185 (2002).

[¶ 38]   Under N.D.C.C. § 24–07–01, the prescriptive road, as will be described on remand, became a public road without any formal action after the expiration of the prescriptive period, which began to run under the district court's findings in the early 1950s.   Reichman is not entitled to damages for inverse condemnation because the road became a public road before she obtained her interest in the land in 2000. *See Nagel*, 474 N.W.2d at 50; *Kritzberger*, 62 N.D. at 214, 242 N.W. at 916.   Reichman therefore acquired her land with the burden of the prescriptive road upon her land, and the district court did not err in dismissing her claim for inverse condemnation.

### IV

[¶ 39]   Reichman argues the district court erred in dismissing her claim for damages for McKenzie County's claimed illegal acts in obtaining an ex parte restraining order.   She seeks $5,000 in attorney fees, because after the County sued her, the County did not provide her counsel with notice before obtaining the ex parte restraining order.   Section 32–06–07, N.D.C.C., authorizes an ex parte restraining order in some exigent circumstances to preserve the parties' rights.   *See Amerada Hess Corp. v. Furlong Oil & Minerals Co.*, 336 N.W.2d 129, 132 (N.D.1983).   Here, we have sustained McKenzie County's claim for a prescriptive road, and Reichman has provided no persuasive authority to support her claim for damages or attorney fees regarding the procedural method used under the current law for obtaining the ex parte temporary restraining order.   We reject her claim.

### V

[¶ 40]   We affirm the judgment, and we remand for further proceedings regarding the description of the prescriptive road.

[¶ 41]   DALE V. SANDSTROM, MARY MUEHLEN MARING, JJ., DONOVAN J. FOUGHTY, D.J., and EVERETT NELS OLSON, S.J., concur.

[¶ 42]   The Honorable DONOVAN JOHN FOUGHTY, D.J., and the Honorable EVERETT NELS OLSON, S.J., sitting in place of KAPSNER, J., and CROTHERS, J., disqualified.